Edward Goodell, J.
On November 10, 1970, Samuel Bierman, Esq., as attorney for Ianda Realty Corp., Apache Realty Corp., and Martin Shapolsky, submitted to me a proposed order in this proceeding entitled ‘ ‘ Order Approving and Terminating Administration and Cancellation of Bond with Stipulation and Exhibits.”
The stipulation referred to in the foregoing title is dated October 6, 1970, and is signed by Mr. Bierman in the foregoing capacities, by Alexander A. Kolben as administrator, and by Martin Shapolsky as president of Ianda Realty Corp. and Apache Realty Corp. and as “ Indemnitor and Guarantor.”
Appended to the foregoing stipulation is a consent to the entry of an order based upon it, executed by William Volckhausen, Esq., as attorney for the petitioners-tenants and Mobilization for Youth for Legal Services, and by the National Surety Company as surety.
Included among the papers so submitted are a copy of a consent to the cancellation of record of the notice of lien issued by the Department of Health in the sum of $2,669.50 and a letter dated October 30, 1970, addressed by the Corporation Counsel to Mr. Bierman, stating that “ With satisfaction of the Emergency repair claims on this property, the City of New York is withdrawing its objection to the accounting and discharge of the Administrator ”.
At the foot of the foregoing stipulation are the words “ It is So Ordered ” and a place for my signature.
In substance, on the basis of the foregoing stipulation, consents, and letter, the court is requested to authorize by its order the discharge of the administrator, the cancellation of his bond, and the waiver of a formal accounting by him; to approve the administrator’s relinquishment to the Apache Realty Corp., the *935 present owner of the premises, of the possession, operation, and control of the premises involved in this proceeding; and to approve the withdrawal of the order to show cause herein dated August 27,1970.
1. For the purpose of explaining the conclusions reached hy the court in connection with the present application, it is pertinent to review to a limited extent some of the proceedings that preceded it.
By order of Judge Tyler dated August 8, 1968, Alexander A. Kolben was appointed administrator of two buildings known as 111 and 113-115 Henry Street.
On July 9,1969, the administrator applied for an order approving his interim accounting for the period from the date of his appointment to March 1,1969. That application was granted by order of Judge Tyler dated August 11,1969.
Thereafter the administrator applied for approval of his account for a further interim period beginning March 1, 1969, and ending November 1, 1969, and for the fixation of fees for the services rendered by him and by counsel for the administrator. That application, because of Judge Tyler’s election to the Supreme Court, was referred to me. As of November 1, 1969, the end of the interim period covered by the accounting, the balance in the administrator’s hands was $2,367.14.
The City of New York in the capacity of a creditor/lienor and Mobilization for Youth for Legal Services representing the tenants voiced various objections to the administrator’s application and, in the case of the city, to the accounting.
On July 10, 1970, I rendered my decision in writing in which, in substance, I approved the administrator’s interim accounting, denied the application of the administrator for a fee for his attorney, awarded the administrator a fee of $1,945, and granted the city the sum of $422.14.
Thereafter Ianda Realty Corp., which had acquired title to the property in foreclosure proceedings, by order to show cause dated July 13, 1970, made an application returnable at Trial Term Part II on July 16, 1970, for an order discharging the administrator, directing the administrator ‘i to forthwith turn over to the new owner of said premises, Ianda Realty Corporation and its agent, Martin Shapolsky, a statement of all the tenants in the premises, their present rent status, their present painting status, all leases and all documents relating to said tenants, and why the said Administrator should not be required to account forthwith to the new owner for all monies collected to date ’ ’ and ‘ ‘ why the new owner, by its agent, Martin Shapolsky, should not be permitted forthwith to re-enter the premises *936 and to collect rents thereat and to proceed to manage the property ”.
Said application was referred to me. I arranged a conference with counsel representing the various interested parties to be held in my chambers on July 30, 1970, the day before the commencement of my vacation.
On July 30, 1970, that conference was held and was attended by the then attorney representing landa Realty Corp., the administrator, the attorney representing the petitioners-tenants, and an attorney representing the office of the Corporation Counsel.
It was my understanding when the conference adjourned that, during my absence on vacation, the parties would explore the possibilities of an agreement having as its underlying objectives the termination of the proceeding and the turning over of the property by the administrator to the new owner.
However, following my return from my vacation, another order to show cause in this proceeding, dated August 27, 1970, and returnable at Trial Term Part II, was referred to me on September 17, 1970. This is the order to show cause referred to in the papers submitted to me by Mr. Bierman on November 10, 1970, and now sought to be withdrawn.
This recital leads me to the discussion of the application before me:
2. The question then arises as. to whether the court should approve the relinquishment of possession, operation, and control of the premises by the administrator. This appears to be a fait accompli.
Generally speaking, it would seem, that in instances where the court designates an appointee to administer property, the officer so appointed should not relinquish possession or control until so authorized by the court that has appointed him.
Nevertheless, while the court’s approval is sought here after the event, it is my view that' it is appropriate to grant that approval.
The underlying purpose of article 7-A is to protect the tenants of multiple dwellings from conditions which endanger their lives, health, or safety. As stated in section 770 of the Real Property Actions and Proceedings Law ‘ ‘ One-third or more of the tenants occupying a multiple dwelling located in the city of New York may maintain a special proceeding * * * upon the ground that there exists in such multiple dwellings or in any part thereof a lack of heat or of running water or of light or of electricity or of adequate sewage disposal facilities, or any other condition dangerous to life, health or safety”. (See, also, “ Legislative findings and intent,” L. 1965, ch. 909, § 1.)
*937 The appointment of an administrator is fundamentally a temporary expedient. As stated in section 778, the purpose of the appointment is “ to order the necessary materials, labor and services to remove or remedy the conditions specified in the judgment ”. Since the ultimate objective is to benefit the tenants and the statute does not forbid it, there would seem to be no sound reason for the withholding of court approval from the transfer of control and operation by the administrator to the owner if the beneficiaries of the proceeding, the tenants, have approved it.
3. I reach a different conclusion, however, with regard to the request for court approval of the waiver of an accounting by the administrator. This is not because the court desires to interfere with the agreement reached by the parties, but because, in my opinion, the statute mandates an accounting.
There are two provisions in the statute with regard to accountings by the administrator:
Section 779, entitled ‘1 Presentation or settlement of accounts,” provides in part that “ Upon motion of the court or the administrator or of the owner, any mortgagee or lienor of record or of any person having an interest, the court may require a presentation or settlement of the accounts with respect thereto.” This proviso is permissive and has practical utility in situations or circumstances where an intermediate accounting may be desirable.
On the other hand, I construe the proviso in section 778, relating to a final accounting, to be mandatory. There it is provided in part that ‘ ‘ Such administrator shall, upon completion of the work prescribed in such judgment, file with the court a full accounting of all receipts and expenditures for such work. ’ ’
The differences in language and purpose of the two sections are persuasive that, while the proviso in section 779 is permissive, the provision in section 778 requires the filing of a final account.
It is fair to presume that the reason for the obligatory character of the provision in section 778 is that it is intended that an administrator shall not be discharged unless and until he has correctly accounted.
I suggest, in conclusion, that, if the administrator should file an account of all receipts and expenditures relative to the work, that is approved by the interested parties, it would be acceptable in that form to the court.
Accordingly, the stipulation herein dated October 6, 1970, is approved to the following extent:
*938 1. The withdrawal by the administrator from the possession, operation, and control of the premises No. Ill and Nos. 113-115 Henry Street, Borough of Manhattan, County, City, and State of New York, and the transfer thereof to Apache Realty Corp., the present record owner of said property.
2. The withdrawal of the order to show cause herein, dated August 27, 1970.
The application to discharge the administrator and to cancel his bond is denied without prejudice to renewal upon the filing by the administrator with the court of a full accounting of all his receipts and expenditures as provided by section 778 of the Real Property Actions and Proceedings Law.