OPINION OF THE COURT
Bernard Fuchs, J.
An administrator under article 7-A of the Real Property Actions and Proceedings Law was appointed by order of this *565 court on March 21, 1973 to receive and administer rents from the property. He moves to be relieved and discharged as administrator and for approval of his account. Although the motion is unopposed, it is the court’s duty to review the account in order to maintain control over the administrator’s conduct. (See, e.g., 49 NY Jur, Receivers, § 50; Cole v Westlong Investors Corp., 64 Misc 2d 933.)
Both the judgment under which the administrator was appointed and section 779 of the Real Property Actions and Proceedings Law require him to keep and present to this court "written accounts itemizing * * * receipts and expenditures”. This appears to be the first account the movant has presented. Nothing in it is labelled a receipt or expenditure nor does it appear that receipts or expenditures have been accounted for under any other label.
The exhibits submitted (covering April, 1973 to April 30, 1977) are an "operations report” showing schedules of income and expenses, tenant accounts receivable, accounts payable and a "trial balance”. It cannot be assumed that the terms "income” and "expenses” represent receipts and expenditures because they show a deficit exceeding $24,000 and there is no indication that the administrator began his operations with that amount in hand. The expense column at least, therefore, includes accruals and this is confirmed by the schedule of accounts payable which totals $41,234.88, including more than $27,000 of expense items.
There seems to have been a direct violation of the judgment by which the administrator was appointed. The judgment states that the work to be done is "estimated to cost in excess of’ $20,000. By its terms, if it appears to the administrator that "the sums above estimated are not sufficient at the time” work or material orders are placed, he "shall apply to this Court, on notice * * * for further instructions”.
According to the "operations report” rehabilitation expenses of $39,615.10 were incurred. This clearly exceeds the estimate even of an amount "in excess” of $20,000, however approximately that was understood. And it must have appeared so at the time at least some of the work or material orders were placed. There is no indication that any application for further instructions was ever made.
The role of administrator under article 7-A is not a complete novelty in the law. His task is "to receive and administer the rent moneys or security deposited with him subject to *566 the court’s direction”. (Real Property Actions and Proceedings Law, § 778, subd 1.) The administrator is thus a form of receiver for the special purposes of article 7-A "of property which is the subject of an action, to carry the judgment into effect”. (CPLR 5106; see, also, 49 NY Jur, Receivers, § 3; Genuth v First Div. Ave. Realty Corp., 88 Misc 2d 586.)
I am not unmindful that, in general, the authority to appoint receivers is withheld from this court by subdivision (c) of section 209 of the New York City Civil Court Act. An exception to that provision is implied, however, in section 110 (subd [a], par [5]) which specifically confers on the Civil Court jurisdiction over article 7-A proceedings.
The "operations report” in the account lists among the "administrative expenses” an item for "legal” of $22,990.99 without specifying the costs of particular services. How much of this item is paid and how much still payable does not appear except that the accounts payable schedule shows $20,068.54 due to the same counsel acting on this motion.
Litigation with the owner is mentioned in the administrator’s affidavit as having required legal service. And section 778 of the Real Property Actions and Proceedings Law does indeed permit him, since the 1974 amendment of that section (subd 1), to "institute all necessary legal proceedings including, but not limited to, summary proceedings for the removal” of tenants. No analysis is presented, however, which demonstrates the statutory justification for this very considerable expense. The administrator should provide one in view of the general restraint upon employment of counsel to which he is subject. (See CPLR 6401, subd [b]; 49 NY Jur, Receivers, § 51; Cole v Westlong Investors Corp., 65 Misc 2d 114.)
Other explanations are called for but not provided by the administrator’s application. He states, for example, that the owner was held in contempt of court and ordered to pay fines for the benefit of the building, none of which was paid. Should the administrator have acted to collect those fines? Has he done so?
Nothing is said of the extent to which the administrator has remedied the conditions specified in the judgment. Which of those conditions have been attended to, if any? What remains to be done?
Many tenants "refused to pay rent and then moved out owing substantial sums”. Schedule A confirms this by showing $11,492.89 due from former tenants as well as $3,359.41 due *567 from present ones. One former tenant owes $2,505, another $1,950. At the same time "rental income has never been sufficient to keep up minimum operating standards”. What steps have been taken to collect these amounts? Why were defaulting tenants allowed to remain so long without being evicted?
A fire caused considerable damage to the building. I have held, on another motion of the administrator, that he may not recover from the mortgagee the proceeds of an insurance policy which the mortgagee maintained solely for its own benefit. The administrator should, however, explain why he did not carry his own fire insurance. (See Real Property Actions and Proceedings Law, § 778, subd 1, par [a]; 149 Clinton Ave. North v Grassi, 51 AD2d 502.)
The list of administrative expenses includes "management fees” and "administrator’s fee”, both inexplicably for the identical sum of $5,745.05. To whom was the management fee paid or payable? How was it computed? What service was rendered? How is the administrator’s fee computed?
The administrator seeks to be relieved and discharged of his duties. There has been no response to his motion from the owner. No proposal for a successor or plan for further management is submitted. There is no indication of the level at which essential services are maintained, the prospects for future service, the extent to which the dangerous conditions (which the administrator was appointed to deal with) have been remedied or what remains to be done.
For all that appears, a grant of the relief requested would place the property in a state of abandonment to the great detriment of the tenants. No reason is given for requesting this relief except the general impression conveyed by the papers that the administrator has given up in apparent failure. Discharge of the administrator is improper in these circumstances. (See 49 NY Jur, Receivers, § 111; 13 CarmodyWait 2d, NY Prac, § 83:73.) It would also tend to frustrate the purpose of article 7-A "to compel the correction” of the dangerous conditions and "increase the supply of adequate * * * dwelling units”. (L 1965, ch 909, § 1 [setting forth the Legislature’s intent].)
Motion denied with leave to renew on a proper showing. The administrator will serve notice of his renewed motion upon the surety on his undertaking. (See CPLR 6404.)
Supporting papers on any renewed motion should include a *568 detailed report on the condition of the property and a reasoned recommendation for successor management. All persons and parties receiving notice of any such renewed motion shall be served by the administrator with a copy of this decision: If the motion is not renewed within 60 days from the filing of this decision, the administrator is directed to serve a copy nevertheless on the surety and on all parties and persons who would properly be served with notice of his motion.