[887 NE2d 1125, 858 NYS2d 67]

CHRISTOPHER SANATASS et al., Appellants, v CONSOLIDATED IN-
VESTING COMPANY, INC., et al., Respondents, et al., Defen-
dants. (And a Third-Party Action.)

Argued March 13, 2008; decided April 24, 2008

**POINTS OF COUNSEL**

*Giuffré & Kaplan, P.C.*, Hicksville (*Susan R. Nudelman* and *Steven Kaplan* of counsel), for appellants. The Appellate Division erred in granting Consolidated Investing Company's motion for summary judgment and dismissal of the Labor Law § 240 (1) cause of action and in denying appellants' cross motion for summary judgment on the Labor Law § 240 (1) cause of action. (*Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 1054; *Sherman v Piotrowski Bldrs.*, 229 AD2d 959; *D'Amico v Manufacturers Hanover Trust Co.*, 177 AD2d 441; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280; *Haimes v New York Tel. Co.*, 46 NY2d 132; *Crespo v Triad, Inc.*, 294 AD2d 145; *Sergio v Benjolo N.V.*, 168 AD2d 235; *Dankulich v Felchar Mfg. Corp.*, 247 AD2d 660.)

*Goldberg & Carlton, PLLC*, New York City (*Michael S. Leyden* of counsel), for respondents. I. The Appellate Division was correct in affirming the Supreme Court's decision to grant Consolidated Investing Company's motion for summary judg-

ment and dismiss plaintiffs' Labor Law § 240 (1) claim while otherwise denying plaintiffs' own motion for summary judgment on this same Labor Law § 240 (1) cause of action. (*Koch v E.C.H. Holding Corp.*, 248 AD2d 510, 92 NY2d 811; *Jehle v Adams Hotel Assoc.*, 264 AD2d 354; *Houchang Haghighi v Bailer*, 240 AD2d 368; *Scaglione v Riverbay Corp.*, 279 AD2d 254; *Urbano v Plaza Materials Corp.*, 262 AD2d 307; *Nagel v D & R Realty Corp.*, 288 AD2d 121; *Molloy v 750 7th Ave. Assoc.*, 256 AD2d 61; *Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Telaro v Telaro*, 25 NY2d 433; *Ta-Chotani v Doubleclick, Inc.*, 276 AD2d 313.) II. As an alternative, Consolidated Investing Company was entitled to summary judgment over and against the third-party defendant. (*Lopez v 36-2nd J Corp.*, 211 AD2d 667; *Richardson v Matarese*, 206 AD2d 354; *McNair v Morris Ave. Assoc.*, 203 AD2d 433.)

*Stewart G. Milch*, New York City, for New York State Trial Lawyers Association, amicus curiae. Both the Appellate Division and Justice Evans erred in dismissing Christopher Sanatass's Labor Law § 240 (1) claim where the undisputed evidence revealed (i) defendant owned the building where plaintiff's accident occurred; (ii) the building was not a one- or two-family dwelling; (iii) there was a factual issue as to whether the work being performed was renovation work within the meaning of the statute; and (iv) the employer-contractor was selected and hired not by operation of law nor by a municipality, but instead by the very entity to whom defendant had leased the premises. (*Klein v City of New York*, 89 NY2d 833; *Felker v Corning Inc.*, 90 NY2d 219; *Almada v Long Is. Light. Co.*, 246 AD2d 563; *Del Vecchio v State of New York*, 246 AD2d 498; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Lombardi v Stout*, 80 NY2d 290; *Haimes v New York Tel. Co.*, 46 NY2d 132; *Bland v Manocherian*, 66 NY2d 452; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280.)

**OPINION OF THE COURT**

GRAFFEO, J.

On this appeal, we conclude that a property owner is liable for a violation of Labor Law § 240 (1) that proximately caused injury to a worker even though a tenant of the building contracted for the work without the owner's knowledge. We therefore reverse the order of the Appellate Division and grant plaintiffs partial summary judgment.

Defendant Consolidated Investing Company owned a commercial building located at 423 West 55th Street in Manhattan. C2 Media, LLC occupied the 11th floor of the building under a lease assignment from the original tenant, Chroma Copy International.[1] C2 Media agreed to abide by the terms of Chroma's lease, including a provision that the "[t]enant shall make no changes in or to the demised premises of any nature without Owner's prior written consent." In addition, a rider to the lease stated that "[a]ll renovations, decorations, additions, installations, improvements and or alterations of any kind or nature in the Demised Premises . . . shall require the prior written consent of Landlord." The lease also contained an indemnification clause in favor of Consolidated and obligated the tenant to obtain comprehensive liability insurance coverage naming Consolidated as an additional insured.

In January 2000, plaintiff Christopher Sanatass, a mechanic employed by JM Haley Corporation, was directed to install a commercial air conditioning unit for C2 Media, which had hired JM Haley without notifying Consolidated. Upon arriving at the work site, plaintiff installed air conditioning ducts and drilled holes into the 10-foot-high ceiling to affix rods designed to hold the 1,500-to-2,500-pound commercial unit. When plaintiff and a coworker hoisted the air conditioning unit about seven feet off the ground, one of the manual material lifts failed, causing the unit to drop and knock plaintiff to the floor. Plaintiff sustained injuries when the unit nearly crushed him.

Plaintiff and his wife, suing derivatively, commenced this action against, among others, Consolidated and Chroma, alleging violations of Labor Law § 240 (1) and § 241 (6). Consolidated cross-claimed against Chroma and brought a third-party action against Chroma and C2 Media seeking contribution and indemnification. Consolidated and plaintiff each moved for summary judgment. In support of his motion, plaintiff offered the affidavit of a licenced professional engineer, who concluded that the two portable lifts used to hoist the air conditioning unit were inadequate and failed because they had a lift capacity of only 1,000 pounds.

Supreme Court granted Consolidated's motion and dismissed the complaint as against it. The Appellate Division, with two Justices dissenting, affirmed, reasoning that under *Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46 [2004]) Consolidated was

---

1. C2 Media was the successor-in-interest by merger to Chroma.

not liable "because the air conditioning installation was performed without its consent and in violation of the lease" (38 AD3d 332, 332 [2007]).[2] Plaintiff appeals as of right to this Court pursuant to CPLR 5601 (a).

At the outset, Consolidated does not dispute that plaintiff was not afforded proper safety devices or that his injuries were proximately caused by the inadequate lifts. It nevertheless contends that our Court can resolve this case on a threshold issue by concluding that plaintiff's work did not constitute an alteration and, therefore, plaintiff was not engaged in an activity protected by Labor Law § 240 (1). We address this question first.

It is now settled that the term "altering" as used in section 240 (1) "requires making a *significant* physical change to the configuration or composition of the building or structure" (*Joblon v Solow*, 91 NY2d 457, 465 [1998]). Conversely, an alteration "does not encompass simple, routine activities such as maintenance and decorative modifications" (*Panek v County of Albany*, 99 NY2d 452, 458 [2003]).

To illustrate, in *Joblon* we determined that the plaintiff electrician's installation of an electric wall clock, which required chiseling a hole in a concrete wall to extend electrical wiring from an adjoining room, was "significant enough" to come within the statute (91 NY2d at 465). Similarly, in *Panek*, the removal of a pair of 200-pound air handlers, requiring preparatory work consisting of the dismantling of a number of components of the cooling system and involving the use of a mechanical lift, constituted a significant change as a matter of law (99 NY2d at 458).

Here, plaintiff drilled holes and affixed metal rods into the ceiling and installed air conditioning ducts as preparatory work. He then attempted to install a 1,500-to-2,500-pound air conditioning unit using two portable manual material lifts, at which point he sustained injuries as a result of an elevation-related hazard—a falling object. This work comfortably satisfies the alteration standard set by *Joblon* and *Panek* as a matter of law. We now turn to the issue that divided the Appellate Division.

---

2. The court also determined that the Labor Law § 241 (6) claim was properly dismissed because the Industrial Code provision relied on by plaintiff was not sufficiently specific to support a violation of the statute. Plaintiff does not raise the section 241 (6) cause of action on this appeal.

Plaintiff argues that Consolidated is an "owner" within the meaning of Labor Law § 240 (1) and that Consolidated is liable for a statutory violation despite its lack of notice or control over the work. Consolidated counters that the courts below correctly applied *Abbatiello* in holding that an out-of-possession owner who has no knowledge of the work being done on its premises cannot be held liable under section 240 (1). Relying on the lease provision obligating the tenant to obtain the owner's permission before hiring a contractor to perform any alterations, Consolidated asserts that the tenant's breach severed any nexus between itself and plaintiff.

Labor Law § 240 (1), commonly referred to as the "scaffold law," provides, in relevant part:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

In 1969, the Legislature expanded the scope of responsible parties from persons "employing or directing another to perform labor" to "[a]ll contractors and owners and their agents" (L 1969, ch 1108, § 1). The legislative history reveals that this amendment was intended to place "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor" rather than on the workers themselves (Mem of Senator Calandra and Assemblyman Amann, 1969 NY Legis Ann, at 407). In broadening the protection afforded by the statute, the Legislature reemphasized that section 240 was enacted for the purpose of protecting workers (*see id.*).

We do not write on a blank slate when interpreting Labor Law § 240 (1). Indeed, a number of well-settled principles provide us with guidance. We have repeatedly stated that Labor Law § 240 (1) "imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury" (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]; *see also Blake v Neighborhood Hous.*

*Servs. of N.Y. City*, 1 NY3d 280, 289 [2003]). To be sure, we have cautioned that an owner is not "an insurer after having furnished a safe workplace" and that an accident, in and of itself, does not establish a statutory violation (*Blake*, 1 NY3d at 286, 289). But at the same time, it is clear that the statutory duty imposed by this strict liability provision is *"nondelegable* and that an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Additionally, section 240 (1) "is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*Panek*, 99 NY2d at 457 [internal quotation marks and citation omitted]).

In a trio of cases, we examined the liability of out-of-possession owners under the Labor Law. First, in *Celestine v City of New York* (59 NY2d 938 [1983], *affg for reasons stated below* 86 AD2d 592 [2d Dept 1982]), a worker who sustained injuries while building a subway line commenced a Labor Law action against the Long Island Rail Road (LIRR), the property owner. LIRR moved for summary judgment dismissing the claim, submitting that it should not be deemed an "owner" for purposes of Labor Law § 241 (6) because the property was subject to an easement in favor of the City of New York and the New York City Transit Authority.[3] In declining to dismiss the section 241 (6) claim, the court rejected LIRR's argument, reasoning that the statute imposes a nondelegable duty on owners to furnish adequate protection to workers "regardless of the absence of control, supervision or direction of the work" (86 AD2d at 593).

Next, in *Gordon*, an employee of Ebenezer Railcar Services brought a Labor Law § 240 (1) action against Eastern Railway Supply, the property owner, seeking damages for personal injuries occasioned when he fell from a ladder. On a motion for summary judgment, Eastern contended that it could not be liable as an owner under section 240 (1) because it had leased the property to Ebenezer, its wholly owned subsidiary, and "neither contracted to have the work performed nor was the work performed for its benefit" (82 NY2d at 559). Relying on *Celestine*, we disagreed and concluded that Eastern was responsible

---

**3.** Labor Law § 241 (6), like section 240 (1), applies to "[a]ll contractors and owners and their agents."

because liability "rests upon the fact of ownership and whether Eastern had contracted for the work or benefitted from it are legally irrelevant" (*id.* at 560).

Finally, in *Coleman v City of New York* (91 NY2d 821 [1997]), an employee of the New York City Transit Authority suffered elevation-related injuries while performing repair work and pursued a Labor Law § 240 (1) claim against the City of New York as the property owner. The City claimed that it should not be strictly liable because it had leased the property to the Transit Authority and "lacked any ability" to protect Authority workers based on the statutory scheme creating the Authority and governing their relationship (*id.* at 823). We rejected the City's position, finding that *Celestine* and *Gordon* articulated a "bright line rule" that section 240 (1) applied to all owners regardless of whether the property was leased out and controlled by another entity or whether the owner had the means to protect the worker (*id.* at 822). In so ruling, we also disavowed *Robinson v City of New York* (211 AD2d 600, 600 [1st Dept 1995]), which had restricted the City's liability as an owner under the Labor Law because it had leased property to the Transit Authority and "had no actual or potential control over the worksite and retained a right of re-entry for non-transit purposes only." We determined that it was for the Legislature, not this Court, to carve out exceptions to the broad reach of owner liability under section 240 (1).

Here, like the defendants in *Celestine*, *Gordon* and *Coleman*, Consolidated seeks to avoid liability under Labor Law § 240 (1) by contending that it is not an "owner" for the purposes underlying the statute. Relying on its lack of knowledge of plaintiff's work, undertaken at the behest of the tenant, Consolidated asks us to import a notice requirement into the Labor Law or, conversely, create a lack-of-notice exception to owner liability. But our precedents make clear that so long as a violation of the statute proximately results in injury, the owner's lack of notice or control over the work is not conclusive—this is precisely what is meant by absolute or strict liability in this context (*see Blake*, 1 NY3d at 289). We have made perfectly plain that even the lack of "any ability" on the owner's part to ensure compliance with the statute is legally irrelevant (*see Coleman*, 91 NY2d at 823). Hence, Consolidated may not escape strict liability as an owner based on its lack of notice or control over the work ordered by its tenant.

Consolidated's reliance on our recent decision in *Abbatiello* is misplaced. In that case, plaintiff, a cable repair technician, was

dispatched by his employer to an apartment building owned by Lancaster Studio Associates in response to a complaint by one of the building's tenants. In the course of accessing a junction box on the exterior of the building, plaintiff's ladder bent, causing him to fall and sustain injuries. As a result, he commenced an action against Lancaster alleging a violation of Labor Law § 240 (1). Although we observed that Lancaster was unaware of and did not consent to the plaintiff's presence on the property, these facts alone were not determinative of our affirmance of the dismissal of the complaint.

Rather, in *Abbatiello* we carefully distinguished *Celestine* and its progeny, noting that in those cases a nexus existed between the out-of-possession owner and the plaintiff, be it by lease, easement or some other property interest. In *Abbatiello*, however, the injured cable technician was on the property solely "by reason of provisions of the Public Service Law" (3 NY3d at 51). Our analysis emphasized that section 228 of the Public Service Law established mandatory access for cable repair workers and that, but for this statute, the plaintiff "would be a trespasser upon Lancaster's property" (*id.* at 52). Public Service Law § 219 also rendered Lancaster "powerless to determine which cable company is entitled to operate, repair or maintain the cable facilities on its property, since such decision lies with the municipality—the franchisor" (*id.*). We concluded that, absent an adequate nexus between the worker and the owner, the cable technician was not entitled to the extraordinary protections of the Labor Law since he was not an "employee" for purposes of section 240 (1); as such, Lancaster could not be liable for his injuries. Contrary to Consolidated's argument in the present appeal, *Abbatiello* did not announce a new notice requirement for section 240 (1) cases.

Consolidated posits that, as in *Abbatiello*, it has an insufficient nexus with plaintiff to support absolute liability. We disagree. Consolidated leased the premises to a tenant who, in turn, hired plaintiff's firm to install a commercial air conditioning unit. True, Consolidated inserted a provision in the lease agreement requiring its tenant to obtain written permission before performing any alterations to the property. But the tenant's breach of this lease clause—while it may have some bearing on Consolidated's indemnification claim—did not sever

the nexus.[4] Plaintiff was specifically employed by the tenant to perform work in Consolidated's building and, as between the owner and the worker, section 240 (1) clearly places the burden on the owner should a violation of the statute proximately cause injury. Unlike the cable technician in *Abbatiello*, the plaintiff in this case was an "employee" for purposes of section 240 (1) and cannot conceivably be viewed as a "trespasser."

At bottom, Consolidated asks us to hold that an owner may insulate itself from liability by contracting out of the Labor Law. We decline its invitation to engraft this new exception onto the statute. To allow owners to do so by the simple expedient of a lease provision, as suggested by the dissent, would eviscerate the strict liability protection afforded by the Labor Law. As we have repeatedly stated, section 240 (1) exists solely for the benefit of workers and operates to place the ultimate responsibility for safety violations on owners and contractors, not the workers. Any modification to this strict liability statute must be made by the Legislature, not this Court.

Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, defendants-respondents' motion for summary judgment as to the Labor Law § 240 (1) cause of action denied and plaintiffs' motion for partial summary judgment as to liability on such cause of action granted.

SMITH, J. (dissenting). I dissent because today's decision unwisely and unnecessarily increases the already heavy burden that Labor Law § 240 (1) places on New York property owners.

The statute says that, with exceptions not relevant here, "[a]ll contractors and owners . . . shall furnish or erect, or cause to be furnished or erected" safety devices "which shall be so constructed, placed and operated as to give proper protection" to workers. The duty of contractors and owners to provide "proper protection" is nondelegable (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Indeed, an owner cannot escape the duty imposed by the statute even by ridding itself of possession of the property; we have held that landlords of leased property are liable as owners under section 240 (1) (*Coleman v City of New York*, 91 NY2d 821, 823 [1997]; *Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559-560 [1993]).

---

4. We take no position on the merits of Consolidated's third-party claims against C2 Media and Chroma.

We have never addressed, however, the situation of a landlord that did not try to delegate responsibility for worker safety to its tenant, but retained in the lease the power to provide protection for workers—only to have the tenant ignore the lease provision. Here, the lease specifically prohibits the tenant from hiring a contractor to make any alterations in the premises without the landlord's prior written consent. A representative of the landlord testified that if a request for consent had been made "we would want to know who the contractor was and we would want the contractor hopefully to be someone that was known and approved by the owner." Whether such an inquiry would have prevented what happened in this case—the hiring of a contractor with unsafe equipment—will never be known, because the tenant violated the lease and never gave the landlord a chance to make the inquiry.

I do not see how the statutory goal of preventing workplace accidents is advanced by holding a landlord liable in a situation like this. What could anyone expect the landlord to do to prevent the accident, other than what it did? "The point of Labor Law § 240 (1) is to compel . . . owners to comply with the law, not to penalize them when they have done so" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 286 [2003]). The result the majority reaches effectively treats this landlord "as an insurer"—contrary to our view of the purpose of the statute as expressed in *Blake* (*id.*).

This result can be justified only by a literal, mechanical reading of the statute, to say that any "owner" is liable whenever a worker is not given proper protection, and is injured. We rejected such literalism in *Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46 [2004]), where a cable television repairman was held to have no claim against a building owner who did not know the repairman was there, and could have done nothing about it if it had. I think we should follow the approach of *Abbatiello* here, where the tenant's breach of the lease prevented the landlord from learning of the worker's presence, rather than expand our already draconian rules of Labor Law § 240 (1) liability.

Chief Judge KAYE and Judges CIPARICK, PIGOTT and JONES concur with Judge GRAFFEO; Judge SMITH dissents in a separate opinion in which Judge READ concurs.

Order, insofar as appealed from, reversed, etc.