*765 OPINION OF THE COURT
Arthur M. Schack, J.
The court, as part of adjudicating the instant order to show cause, must determine if an out-of-possession owner of a building under the control of a court-appointed 7-A administrator (RPAPL 769 et seq.) can be liable to a worker, pursuant to Labor Law § 240 (1), for injuries in an elevation-related accident. The answer is yes.
Defendant Miranda Chu is the owner of a residential multiple dwelling located at 342 14th Street, Brooklyn, New York (the building). The Honorable Ava Alterman, on September 24, 1999, in Housing Part B of the Civil Court of the City of New York, Kings County (index No. 2327/99), pursuant to RPAPL article 7-A, appointed defendant Larry Hirschfield as the 7-A administrator for the building (affirmation in opposition, exhibit 2). He remains as the 7-A administrator of the building. Hirschfield, as the 7-A administrator, operates and controls the building, and is entitled to: collect rents; prosecute summary proceedings to evict tenants who fail to pay rent or who are dangerous to the operation of the building; rent vacant apartments; and remove building code violations from the premises.
On or about July 14, 2003, almost four years after Hirschfield became the building’s 7-A administrator, plaintiff Basher Abdul alleges that as an employee of third-party defendant M.D. Robiul Hoque Co., Inc., which had been hired by Hirschfield to perform renovations at the building, he fell from a ladder and suffered personal injuries.
Defendant Chu failed to appear in this court on July 6, 2007, an adjourned date, in response to plaintiffs order to show cause for a default judgment against her for failing to answer plaintiffs summons and complaint. I granted plaintiffs order to show cause for a default judgment against Chu because of her failure to timely appear in the instant action. Now, Chu moves by order to show cause, pursuant to CPLR 5015, to vacate her July 6, 2007 default, claiming an excusable default and a meritorious defense, and for dismissal of the instant action against her for lack of subject matter jurisdiction, pursuant to CPLR 3211 (a) (7), and for failure to state a cause of action. Plaintiff opposes defendant Chu’s order to show cause, claiming that Chu does not have an excusable default and lacks a meritorious defense. Further, plaintiff claims that even if the court vacates Chu’s default, Chu is liable as the building’s owner, pursuant to Labor Law § 240 (1), for plaintiffs injuries.
*766 The court, for the reasons to follow, vacates defendant Chu’s default, but denies that branch of the instant order to show cause to dismiss the complaint against defendant Chu. In New York State, as a matter of public policy to protect workers, when a 7-A administrator operates a multiple dwelling, an out-of-possession owner is liable to a worker injured while working on an elevation-related repair project at the premises.
Background
Hirsehfield, approximately four years after his court appointment as the 7-A administrator of the building, contracted with Abdul’s employer, Hoque, for repairs at the building. Abdul asserts in his affidavit (affirmation in opposition, exhibit 3) that on the day of his alleged accident, July 14, 2003, he was assigned to paint the exterior of the building. He states, in paragraph three of his affidavit,
“I was standing on the ladder at an elevated height and doing my work when the ladder fell, and I fell with the ladder. While I was working on this ladder, it was not tied-off nor secured in any way, nor was it being held. I was not given any fall protection equipment in connection with the work which I was doing at the time of my accident.”
Further, in paragraph four, he states that he was injured, was taken to New York Methodist Hospital and had orthopedic surgery.
Chu, in her affidavit in support of the instant order to show cause, states, in paragraph three,
“I have been deprived of operation and control of the building and barred from entering the building by court order entered in a Civil Court, 7-A proceeding, in September 1999. Since September 1999 . . . HIRSCHFIELD, as 7-A Administrator has[ ] had total control over the day to day operations of the building.”
She alleges that Hirsehfield hired Hoque to make repairs to the building. Further, in paragraph seven, she states, “I have not been inside the Building for eight years. In fact, if I were to enter without express permission of the 7-A Administrator, I would be subject to immediate arrest for violation of the 7-A order.” She claims, in paragraph nine, that she was unaware of the contract between Hoque and Hirsehfield, as the 7-A administrator, to perform repairs at the building. Chu, in paragraph 10, claims “a full and meritorious defense to this ac *767 tion since no cause of action exists against me” for plaintiff’s injuries in that Hirschfield’s appointment as the 7-A administrator “freed me of all legal duties and responsibilities to any and all third parties claiming personal injuries in the Building.” Further, Chu claims, in paragraph 13, that there would be no prejudice to Hirschfield by vacating her default “since this action has never gotten beyond basic procedural steps. There has been no discovery at all, and no motions of substance.”
With respect to her default in appearing on July 6, 2007, Chu states, in paragraph four, that she was never personally served with papers in the instant action and eventually received the summons and complaint in the mail “long after the commencement of the action.” When she appeared in this court, on May 11, 2007, in response to plaintiff’s order to show cause for a default judgment against her, Chu requested an adjournment to retain counsel and the court adjourned Abdul’s order to show cause to July 6, 2007. Then, defendant Chu alleges that “I forgot to appear on the adjourned date. After some months, when I recollected my failure to appear, I retained the firm of Wenig Saltiel & Greene, LLP and asked them to assist me.”
Lastly, Chu asserts, in paragraph 15, that after vacating her default, the court should dismiss the instant action against Chu because Hirschfield, as the 7-A administrator,
“assumed total and complete responsibility for the operation and maintenance of the Building. Since RPAPL 778 (6) places the 7-A Administrator in the shoes of the legal owner and divests the owner [of] operation control and responsibility for the operation of the property, the 7-A Administrator, as a matter of law, is the only proper party Defendant in this case.”
Discussion
Courts have been very clear in explaining the necessary elements for vacating a default. “A party seeking to be relieved of its default must establish both a reasonable excuse for the default and a meritorious defense (see, CPLR 5015 [a] [1]; Fennell v Mason, 204 AD2d 599).” (Eretz Funding v Shalosh Assoc., 266 AD2d 184, 185 [2d Dept 1999].)
“It is axiomatic that a court may vacate a default upon a showing by the movant of both a reasonable excuse for the default and the existence of a meritorious claim (see CPLR 5015 [a] [1]; Katsnelson v ELRAC, Inc., 304 AD2d 619 [2003]; Matter of Gam *768 bardella v Ortov Light., 278 AD2d 494 [2000]; Parker v City of New York, 272 AD2d 310 [2000]).” (Henry v Kuveke, 9 AD3d 476, 479 [2d Dept 2004]; see Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co., 67 NY2d 138 [1986]; Kurtz v Mitchell, 27 AD3d 697 [2d Dept 2006]; Roussodimou v Zafiriadis, 238 AD2d 568 [2d Dept 1997].)
“Whether an excuse is reasonable is a determination committed to the sound discretion of the court (see Matter of Hye-Young Chon v Country-Wide Ins. Co., 22 AD3d 849 [2005]; Abrams v City of New York, 13 AD3d 566 [2004]).” (Durr v New York Community Hosp., 43 AD3d 388, 389 [2d Dept 2007]; see Vasquez v New York City Hous. Auth., 51 AD3d 781 [2d Dept 2008]; White v Incorporated Vil. of Hempstead, 41 AD3d 709 [2d Dept 2007]; Beizer v Funk, 5 AD3d 619, 620 [2d Dept 2004].)
Also, the court is mindful that “public policy favors the resolution of cases on the merits.” (Jolkovsky v Legeman, 32 AD3d 418, 419 [2d Dept 2006]; see Cortlandt Healthcare, LLC v Gantt, 54 AD3d 799 [2d Dept 2008]; Hosten v Oladapo, 52 AD3d 658 [2d Dept 2008]; Montgomery v Cranes, Inc., 50 AD3d 981 [2d Dept 2008]; Bunch v Dollar Budget, Inc., 12 AD3d 391 [2d Dept 2004].)
Applying the above standards to defendant Chu, and balancing Chu’s claim of a reasonable excuse and meritorious defense with the lack of prejudice to plaintiff and public policy favoring resolution of cases on the merits, the court vacates defendant Chu’s default. The court, in examining this case’s official file, archived with the Kings County Clerk, discovered that plaintiff never served Chu with a written copy of my July 6, 2007 order with notice of entry. CPLR 5015 (a) states that a judgment or order may be vacated:
“upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
“1. excusable default, if such motion is made within one year after service of a copy of the judgment or order with written notice of its entry upon the moving party.”
Thus, defendant Chu’s instant order to show cause to vacate her default is timely. Despite making the instant order to show cause on July 7, 2008, one year and one day after my July 6, 2007 order finding Chu in default, Chu was never served with a written notice of entry of the July 6, 2007 order. Further, since *769 discovery has not yet occurred, there is no prejudice to plaintiff Abdul by the restoration of Chu to the instant case. Chu was bereft of counsel until making the instant order to show cause. Therefore, the court will vacate Chu’s default, because “courts take a liberal approach in completely, conditionally, or partially setting aside a default judgment where, in the interest of justice and in the court’s discretion, such relief is deemed appropriate.” (Schutzer v Berger, 40 AD2d 725 [2d Dept 1972]; see Damiano v Corhan, 42 AD2d 699 [2d Dept 1973].)
The court finds that Chu has a meritorious defense. She argues that the denial of having the powers of ownership of the building while the building is under 7-A administration makes the 7-A administrator liable, and not her, under Labor Law § 240 (1). Defendant Chu argues that she never contracted with Hoque for the work and should not be liable for plaintiffs accident. While this argument will ultimately fail in the analysis to follow, it is a “meritorious defense.” A “meritorious defense” is defined as “[a] defense that addresses the substance or essentials of a case rather than dilatory or technical objections.” (Black’s Law Dictionary 430 [7th ed 1999].) Chu’s defense addresses a substantive matter in this case — who is liable to plaintiff, pursuant to Labor Law § 240 (1), if plaintiff fell as he alleges.
Since the court is vacating defendant Chu’s default, Chu’s counsel is granted until 30 days after service upon Chu’s counsel by plaintiffs counsel of written notice of entry of this order to file and serve an answer on behalf of defendant Chu.
With respect to ruling on that branch of Chu’s order to show cause to dismiss plaintiffs case against her, for plaintiffs failure to state a cause of action, the court must liberally construe the pleadings and accept the facts as alleged in the complaint as true in determining if the alleged facts fit into any cognizable legal theory. (Leon v Martinez, 84 NY2d 83, 87 [1994]; Morone v Morone, 50 NY2d 481, 484 [1980]; Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]; Doria v Masucci, 230 AD2d 764, 765 [2d Dept 1996].)
Labor Law § 240 (1), the “scaffold law,” states in pertinent part:
“All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall *770 furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
The Court of Appeals, in Blake v Neighborhood Hous. Servs. of N.Y. City (1 NY3d 280, 284-286 [2003]), observed that:
“The first scaffold law, an ancestor of our Labor Law § 240 (1), was enacted ... in response to the Legislature’s concern over unsafe conditions that beset employees who worked at heights (see L 1885, ch 314). In promulgating the statute, the lawmakers reacted to widespread accounts of deaths and injuries in the construction trades. Newspapers carried articles attesting to the frequency of injuries caused by rickety and defective scaffolds . . .
“Most tellingly, the lawmakers fashioned this pioneer legislation to ‘give proper protection’ to the worker. Those words are at the heart of the statute and have endured through every amendment . . .
“The Legislature looked to employers (and later, contractors and owners) as the entities best able to control the workplace and provide for its safety, casting them in liability for their failure to obey the law. The objective was — and still is — to force owners and contractors to provide a safe workplace, under pain of damages.” (Emphasis added.)
“It is settled that [Labor Law § ] 240 (1) ‘ “is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed.” (See Quigley v. Thatcher, 207 N. Y. 66, 68.)’ ” (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991].) The Rocovich Court (at 513) looked at “the nature of those occupational hazards which the Legislature intended should warrant the absolute protection that the statute affords.” Further (at 514), the Court found that “[t]he contemplated hazards are those related to the effects of gravity where protective devices are called for.” Subsequently, the Court of Appeals held that “Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person.” (Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993].) Then, the Court of *771 Appeals, in Panek v County of Albany (99 NY2d 452, 457 [2003]), instructed:
“We have repeatedly observed that the purpose of the statute is to protect workers by placing ultimate responsibility for safety practices on owners and contractors instead of on workers themselves (see Martinez v City of New York, 93 NY2d 322, 325-326 [1999]; Zimmer v Chemung County Performing Arts, 65 NY2d 513, 520 [1985], rearg denied 65 NY2d 1054 [1985]). Consistent with this objective, [Labor Law § 240 (1)] imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty that proximately causes a plaintiffs injury. As a result, this strict liability provision ‘is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed’ (Gordon v Eastern Ry. Supply, 82 NY2d 555, 559 [1993]).”
Defendant Chu argues that any liability that she has, as the building’s owner, to protect a plaintiff worker from an elevation-related accident was assumed by defendant Hirschfield in his capacity as the building’s 7-A administrator. Hirschfield argues that his liability is limited to only his official capacity as the 7-A administrator. RPAPL 778 (6) states that “[s]uch administrator shall be liable only in his official capacity for injury to persons and property by reason of conditions of the premises in a case where an owner would have been liable; he shall not have any liability in his personal capacity.” Plaintiff Abdul, in Civil Court, Kings County, Housing Part B, was granted leave to commence the instant personal injury action against defendant Hirschfield in an April 18, 2006 decision and order of the Honorable Cheryl J. Gonzales (affirmation in opposition, exhibit 5). Hirschfield opposed plaintiffs application for permission to sue him as the 7-A administrator. Judge Gonzales’s instructive decision and order held, in part, that:
“Article 7-A of the RPAPL was enacted in furtherance of the public policy of the state to remedy conditions in multiple dwellings which are dangerous to the health and safety of the residents. Once appointed, a 7A Administrator is empowered to collect rents and use those funds to make the necessary repairs. Therefore, the administrator is put in the position of the owner for some purposes, but does not fully stand in the shoes of the owner (Law *772 rence v Martin, 131 Misc 2d 256 [Civ Ct, New York County 1986]). RPAPL § 778 (6) provides that an administrator will only be liable in his official capacity for torts arising out of the conditions in the building in cases where the owner would have been liable . . .
“The role of a 7A administrator is closely related to that of a receiver (Mercer v 944 Mercer Holding Corp., 92 Misc 2d 564 [Civ Ct, Kings County 1977]; Seril v Belnord Tenants Assn., 235 AD2d 214 [1d Dept 1977]). Both 7A administrators and receivers are appointed by the court to manage property. The 7A administrator specifically deals with improving hazardous living conditions in multiple dwellings, and receivers are appointed to protect private interests in property that may be subject to foreclosure. Similar language is used in RPAPL 778 (6) and GOL 9-101 regarding liability of administrators and receivers in their official capacities. Leave of court to court appointed managers of property is required to protect against harassment and unnecessary litigation. (Copeland v Salomon, 56 NY2d 222 [1982]) . . .
“Mr. Hirschfield pointed out . . . the indemnification clause in his contract with Hoque, [and] he also contends that he would be forced to personally defend any prospective action against him in his official capacity. The indemnification clause and the insurance requirement appear to be separate obligations, and it is unclear why the administrator maintains that he would be forced to defend an action with personal funds.
“The language of RPAPL 778 (6) states that an administrator . . . shall be liable in his official capacity. This language is not discretionary. The law clearly contemplates that injured parties should be able to seek redress for torts arising out of the conditions at the property managed by the administrator. The issue of whether the owner can be held liable is not for this court to decide. In addition, the administrator can seek the appropriate approval for expenses in his official capacity as part of his final accounting.” (Emphasis added.)
Thus, it is the law of the case that Hirschfield, in his official capacity as the building’s 7-A administrator, may be liable to *773 plaintiff. Despite Chu’s argument that Hirschfield, the building’s 7-A administrator, assumed her liability, she, despite being, an out-of-possession owner, is still the “owner” of the building for purposes of Labor Law § 240 (1), and thus may be liable to Abdul.
Several months ago, on April 24, 2008, the Court of Appeals, in Sanatass v Consolidated Inv. Co., Inc. (10 NY3d 333, 335 [2008]), held that “a property owner is liable for a violation of Labor Law § 240 (1) that proximately caused injury to a worker even though a tenant of the building contracted for the work without the owner’s knowledge.” The Sanatass Court (at 338-339, quoting Gordon, 82 NY2d at 559, and citing Blake, 1 NY3d at 289) noted that the Court “repeatedly stated that Labor Law § 240 (1) ‘imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury.’ ” Further, the Court instructed (at 339):
“[I]t is clear that the statutory duty imposed by this strict liability provision is ‘nondelegable and that an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control’ (Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]). Additionally, section 240 (1) ‘is to be construed as liberally as may be for the accomplishment of the purpose for which is was thus framed’ (Panek, 99 NY2d at 457 . . . ).”
It is clear that Chu, an out-of-possession owner, had no notice of Hirschfield’s contract with Hoque and no control over Hoque’s work. However, Chu, as a matter of public policy, applying Sanatass, can be liable, pursuant to Labor Law § 240 (1), to the injured worker, Abdul. The Sanatass Court (at 340), observed that
“our precedents make clear that so long as a violation of the statute proximately results in injury, the owner’s lack of notice or control over the work is not conclusive — this is precisely what is meant by absolute or strict liability in this context (see Blake, 1 NY3d at 289) . . . Hence, Consolidated may not escape strict liability as an owner based on its lack of notice or control over the work ordered by its tenant.”
Thus, Sanatass makes it clear that the purpose of Labor Law § 240 (1) is to protect workers, even if a building’s owner had *774 no knowledge of elevation-related work being performed at the building. The Court’s majority opinion emphasized New York’s continuation of its public policy to protect workers by concluding (at 342), “[a]s we have repeatedly stated, section 240 (1) exists solely for the benefit of workers and operates to place the ultimate responsibility for safety violations on owners and contractors, not the workers. Any modification to this strict liability statute must be made by the Legislature, not this Court.”
Hirschfield’s appointment as the building’s 7-A administrator does not protect Chu, the building’s out-of-possession owner, from potential Labor Law § 240 (1) liability to plaintiff, an injured worker. To shield Chu from liability and dismiss her from plaintiffs complaint for failure of plaintiff to state a cause of action, pursuant to CPLR 3211 (a) (7), would contravene New York State’s 123-year-old public policy of protecting workers injured in elevation and gravity related accidents. Just as Consolidated, the building owner in Sanatass, unsuccessfully tried to escape from liability to an injured worker, Chu “may not escape strict liability as an owner based on . . . lack of . . . control over the work” (Sanatass at 340).
Conclusion
Accordingly, it is ordered that the branch of defendant Miranda Chu’s order to show cause, pursuant to CPLR 5015, to vacate her July 6, 2007 default, because of her reasonable excuse and meritorious defense is granted; and it is further ordered that the branch of defendant Miranda Chu’s order to show cause, pursuant to CPLR 3211 (a) (7), to dismiss plaintiff Basher Abdul’s complaint against defendant Miranda Chu is denied.