(April 7, 2011)

■ CARBY BRUCE, Respondent, v 182 MAIN ST. REALTY CORP., Appellant. [921 NYS2d 42]—

Order, Supreme Court, Bronx County (Lucy Billings, J.), entered October 2, 2009, which granted so much of defendant's motion for summary judgment as sought to dismiss the Labor

Law §§ 200, 240 (1) and § 241 (6) causes of action, unanimously modified, on the law, to deny the motion as to the Labor Law § 240 (1) and § 241 (6) causes of action, and otherwise affirmed, without costs. Order, same court and Justice, entered April 27, 2010, which, upon reargument of the motion to the extent it sought to dismiss the common-law negligence claim, adhered to the original determination, unanimously reversed, on the law, without costs, and the motion granted.

Plaintiff Carby Bruce claims that he was injured as the result of a fall from a fiberglass A-frame ladder while engaged in construction or renovation work at a warehouse in the Bronx owned by defendant 182 Main St. Realty Corp. The complaint asserts claims under Labor Law §§ 200, 240 (1) and § 241 (6) and for common-law negligence. Defendant's motion for summary judgment was based on the contention that it cannot be held liable because neither it, nor any agent or contractor hired by it, asked or arranged for any work to be performed on the premises, nor did it know of any such work being done.

Plaintiff testified at his deposition that a man named Barry called him and said he had some work to be done. Plaintiff agreed to do it, although Barry did not specify the type of work until they arrived at the premises. Nor did Barry ever specify on whose behalf plaintiff was being hired. When plaintiff arrived at the premises, a one-story building that appeared to contain a car repair business to which they gained access by an open garage door, he observed engines and car parts all over the floor. The only people present with plaintiff were Barry and another man named Mario. Barry instructed plaintiff to remove old pipes and other items hanging from the ceiling, and plaintiff was furnished with two tools, "a hand-held grinder type of saw [that] cuts through metal" and "[l]arge scissor snips, . . . bow cutters," and an A-frame, 10- to 12-foot fiberglass ladder. To set up the ladder to gain access to the pipes to be removed, plaintiff said, he had to maneuver it to fit between two car engines on pallets just below the area where he was to perform the work. Consequently, plaintiff positioned the ladder in a way that seemed most stable, between the pallets, with part of the ladder "touching the cement [floor]" and the other portion "on this pallet." Plaintiff determined that the ladder "was stable," that is, "[g]ood enough," and he took the tools and ascended the ladder. No one held the ladder steady while he was on it.

Plaintiff had been working for less than five minutes when he tumbled off the ladder. He was unable to recall whether he felt the ladder move or shift before he toppled off, although he asserted that the ladder was "shaking or wobbling." Plaintiff

explained that he was not sure what caused him to lose his balance and fall, and that as he fell he focused on how he could avoid landing on top of the car engines on the floor. Following the incident, Barry and Mario helped him up and took him in a van to Jacobi Hospital, where several surgeries were ultimately performed on him.

Plaintiff's sister, Carrol Burnett, who was employed at the time at Jacobi Hospital, stated in an affidavit that "[o]n January 31, 2005, at about 5:00 p.m., after I had just left my job for the day, I received a telephone call from my brother, the plaintiff, in which he told me he had been in an accident. He said he was on his way to Jacobi Hospital and was being driven there in a van. I could hear him screaming out in pain as the vehicle in which he was traveling hit bumps. I turned back to wait for him in the emergency room . . . He was brought in by two gentlemen, one of whom introduced himself to me as 'Barry'. I now know that his full name is Barry Montgomery." Burnett also stated that she observed Barry Montgomery not only drive plaintiff to the emergency room but also help plaintiff during the admission process.

Defendant relies primarily on the deposition testimony of Angelo Koutsavlis, a principal of 182 Main St. Realty Corp., and of Barry Montgomery. Koutsavlis asserted that there was a total of four tenants on the premises on January 31, 2005, one of which was an auto repair business, and that it was his practice to visit the building monthly to collect the rent and whenever a tenant called him with a problem. In response to the question of whether he was aware of any construction or renovation work inside the building at any time prior to January 31, 2005, he said, "I don't think so."

Koutsavlis admitted that he was acquainted with an individual named Barry Montgomery since at least a decade earlier when he sold cars in the Bronx, and Montgomery "was a customer." However, Koutsavlis insisted that he had not had any business dealings with Montgomery in either 2004 or 2005, and said he believed he had last encountered Montgomery "back in the car business, a couple of years [earlier]." He said he had not seen or spoken with Montgomery in the building where plaintiff's accident took place, nor had he had "any business dealings with him for any other reasons" except for his "dealings with him in the [automobile] salvage business." He said Montgomery had never performed any work on behalf of Koutsavlis at the building.

Koutsavlis asserted that he did not learn of plaintiff's accident until about one year later when he received "some

paperwork," at which point he called his tenants "and asked them if they knew of any accident that may have occurred." He was not given any information by the tenants. He had no recollection of any construction or renovation work being done in the premises during his visit to the property in January of 2005.

Barry Montgomery testified at a deposition that he was acquainted with Angelo through the automobile salvage business that Angelo operated, that he understood Angelo, whose last name he did not know, to be the owner of the building. Montgomery contradicted Koutsavlis's assertion that the two men had not had any business dealings in either 2004 or 2005. Montgomery testified that Angelo had asked him for an estimate on a repair of the building's roof, although Angelo did not ultimately hire him for the job. Montgomery also denied any awareness of any work taking place on those premises. Indeed, he testified that he had never hired plaintiff to do any kind of work, and denied any knowledge of plaintiff's injury on January 31, 2005 "until all of this."

However, Montgomery acknowledged having some limited acquaintance with plaintiff. He said plaintiff was generally known as Bruce, and that Bruce used to come to a garage Montgomery rented on 221st Street and ask for work. Montgomery said he had seen him painting outside, and believed that "he just does little handyman special things."

Issues of fact preclude summary judgment dismissing plaintiff's Labor Law claims.

Labor Law § 240 (1) imposes a nondelegable duty on owners, even when the job is performed by a contractor the owner did not hire and of which it was unaware, and therefore over which it exercised no supervision or control (see Sanatass v Consolidated Inv. Co., Inc., 10 NY3d 333, 339 [2008]). In Sanatass, the Court held that "a property owner is liable for a violation of Labor Law § 240 (1) that proximately caused injury to a worker even though a tenant of the building contracted for the work without the owner's knowledge" (id. at 335). There, the commercial tenant had, without the knowledge or consent of the landlord, hired a company to install a commercial air conditioning unit, and an employee of the installer was injured when the unit fell as it was being hoisted to the ceiling. The building owner, named as a defendant, sought summary judgment on the ground that it had neither notice nor control of the work, and that, indeed, the work violated a lease provision requiring its consent to any such alterations by contractors.

The Sanatass court held that the landlord was not entitled to summary judgment, despite its lack of notice or knowledge of or

consent to the work. It explained that "so long as a violation of the statute proximately results in injury, the owner's lack of notice or control over the work is not conclusive—this is precisely what is meant by absolute or strict liability in this context . . . [E]ven the lack of 'any ability' on the owner's part to ensure compliance with the statute is legally irrelevant" (*id.* at 340). Accordingly, defendant's assertion here that it neither arranged for nor knew about plaintiff's being hired to work on its premises does not entitle it to summary judgment.

Moreover, the evidence creates a question of fact as to who hired plaintiff and on whose behalf. While plaintiff conceded that he did not know who had retained Montgomery to do the work, Koutsavlis's assertion that he knew nothing about any such work was undercut by Montgomery's assertion that Koutsavlis had solicited an estimate for certain work. Montgomery's assertion that he did not get the job and did not hire plaintiff was contradicted by evidence that Montgomery brought plaintiff to the hospital after his fall.

Nor can defendant prevail on its motion by asserting that the incident did not occur on its premises. While plaintiff was initially unclear at deposition as to the premises' address, he was subsequently able to pin down the exact location of the building. His initial difficulty and his subsequent clarification do not constitute the creation of a feigned factual issue; rather, the question of whether the accident occurred on premises owned by defendant is a fact issue that may be addressed at trial.

We also reject defendant's contention that there was no evidence that the ladder was unstable so as to establish a violation of Labor Law § 240 (1). Contrary to defendant's assertion, plaintiff expressly testified that the ladder shook and wobbled. Moreover, "failure to properly secure a ladder to insure that it remains steady and erect while being used, constitutes a violation of Labor Law § 240 (1)" (*Schultze v 585 W. 214th St. Owners Corp.*, 228 AD2d 381 [1996]). In view of plaintiff's testimony that the presence of the pallets and engines prevented him from placing the ladder squarely on the cement floor, forcing him to situate it with one part touching the cement floor and the other portion on a pallet, there is a question as to whether some additional steps should have been taken to secure the ladder.

Nor is defendant entitled to summary judgment dismissing plaintiff's Labor Law § 241 (6) claim, based on an asserted violation of 12 NYCRR 23-1.21 (e) (3).

However, defendant is entitled to summary judgment dismissing both the common-law negligence and Labor Law § 200

claims. The accident was not caused by a dangerous condition of which defendant had actual or constructive notice (*see Gordon v American Museum of Natural History*, 67 NY2d 836, 837-838 [1986]), and defendant is not even alleged to have directed or controlled plaintiff's work on the site (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Concur—Tom, J.P., Saxe, Friedman, Sweeny and Abdus-Salaam, JJ.