[930 NE2d 271, 904 NYS2d 350]

ALAN MORTON et al., Appellants, v STATE OF NEW YORK, Respondent. (Claim No. 96522.)

Argued May 4, 2010; decided June 8, 2010

## POINTS OF COUNSEL

*Pollack, Pollack, Isaac & De Cicco,* New York City (*Brian J. Isaac* of counsel), and *Salenger Sack Schwartz & Kimmel* (*Marvin Salenger* and *Michael Schwartz* of counsel) for appellants. Since New York Water Service Corporation (NYW) had a legal duty to maintain the water mains which NYW owned, located under the State of New York's roadways and land, and since the work was being performed in response to an emergency break which was destroying the roadway, claimant is entitled to Labor Law § 241 protection, even if NYW failed to secure a permit required under Highway Law § 52; plaintiff cannot be considered a trespasser; the State's lack of knowledge or benefit would make no difference as liability is established based on the fact of ownership. (*Rocovich v Consolidated Edison Co.,* 78 NY2d 509;

*Zimmer v Chemung County Performing Arts,* 65 NY2d 513; *Koenig v Patrick Constr. Corp.,* 298 NY 313; *Lopes v Rostad,* 45 NY2d 617; *Weiss v Fote,* 7 NY2d 579; *Annino v City of Utica,* 276 NY 192; *Brusso v City of Buffalo,* 90 NY 679; *Storrs v City of Utica,* 17 NY 104; *Rochester & Lake Ontario Water Co. v City of Rochester,* 176 NY 36; *Village of Pelham Manor v New Rochelle Water Co.,* 143 NY 532.)

*Andrew M. Cuomo, Attorney General,* Albany (*Victor Paladino, Barbara D. Underwood, Andrew D. Bing* and *Peter H. Schiff* of counsel), for respondent. The State of New York is not liable under Labor Law § 241 (6) because there was no nexus between the State and claimant, who was trespassing on the State's property. (*Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Morris v Pavarini Constr.,* 9 NY3d 47; *Mordkofsky v V.C.V. Dev. Corp.,* 76 NY2d 573; *Whelen v Warwick Val. Civic & Social Club,* 47 NY2d 970; *Abbatiello v Lancaster Studio Assoc.,* 3 NY3d 46; *Scaparo v Village of Ilion,* 64 AD3d 1209, 13 NY3d 864; *Ogden v City of Hudson Indus. Dev. Agency,* 277 AD2d 794; *Sanatass v Consolidated Inv. Co., Inc.,* 10 NY3d 333; *Augeri v Roman Catholic Diocese of Brooklyn,* 225 AD2d 1105; *Brothers v New York State Elec. & Gas Corp.,* 11 NY3d 251.)

## OPINION OF THE COURT

READ, J.

Claimant Alan Morton was injured on the morning of April 3, 1997 while working for his employer, New York Water Service Corporation (the water company), a private company that furnishes water to portions of Nassau County. On that date, he was a member of a four-person work crew, including a foreman, dispatched with a backhoe to fix a break reported in a company-owned water main installed in 1928 beneath Carman Mill Road, Massapequa, New York, a part of the State of New York's highway system (*see* Highway Law § 341 [29] [1]).

Upon arrival at the job site, the work crew notified affected customers and shut off water service, excavated test holes to pinpoint the leak's origin, and placed traffic cones to alert motorists to the presence of the backhoe, which occupied a portion of the northbound travel lane. Using the backhoe and shovels, the crew dug up blacktop in the roadbed and created a hole or trench, exposing the 12-inch water main buried several feet underground. When claimant climbed down into this trench to clean around the main and apply a repair clamp, a side wall caved in, burying his right leg and foot.

In June 1997, claimant, with his wife suing derivatively, brought this action against the State. He asserted common-law negligence and violations of Labor Law §§ 200, 240 and 241 (6), and sought $5.5 million in damages. In 2002, claimant moved for partial summary judgment as to liability on his Labor Law § 241 (6) and negligence claims. He premised liability in the former on violation of Industrial Code (12 NYCRR) subpart 23-4, which requires banked or sloped sides (12 NYCRR 23-4.2 [a]) or "sheeting, shoring and bracing" (12 NYCRR 23-4.4 [a]) of excavations that are five feet or more deep. The State opposed the motion and cross-moved for summary judgment dismissing the complaint.

The State argued that it was not liable under Labor Law § 241 (6) because the water company failed to obtain a work permit from the New York State Department of Transportation (DOT), as mandated by Highway Law § 52, prior to repairing the water main, which was situated within the state highway right-of-way. Section 52 provides that

> "[e]xcept in connection with the construction, reconstruction, maintenance or improvement of a state highway, no person, firm, corporation, municipality, or state department or agency shall . . . lay or maintain [within the state highway right-of-way] underground wires or conduits or drainage, sewer or water pipes, except in accordance with the terms and conditions of a work permit issued by the commissioner of transportation" (*see also* Vehicle and Traffic Law § 1220-c ["(e)xcept in connection with the construction, reconstruction, maintenance, or improvement of a state highway, no person shall work on a state highway without a work permit issued by the state commissioner of transportation"]; 17 NYCRR 126.2 [a], [b] [a work permit must be secured "to temporarily obstruct or to install, construct, maintain or operate any facilities within the bounds of a State highway right-of-way," including "excavating . . . or work of a like nature under, or over or along the highway"]).

By decision and order dated October 21, 2002, the Court of Claims dismissed claimant's negligence claims because the State lacked actual or constructive notice of any dangerous condition and did not exercise supervision or control over the work site. The court also denied claimant's motion and the State's cross

motion for summary judgment on the Labor Law § 241 (6) claim. The judge concluded that Highway Law § 52 did not insulate the State from liability under Labor Law § 241 (6) because this provision "imposed a nondelegable duty upon 'owners' to provide reasonable and adequate protection and safety to persons employed in excavation work regardless of the absence of control, supervision or direction of the work." He did find, however, that material questions of fact existed as to soil composition and the excavation's depth, which implicated the applicability of the Industrial Code sections relied upon by claimant.

After the ensuing nonjury trial, the Court of Claims on April 9, 2003 found that the excavation was not protected by sloped or banked sides or by sheeting, shoring or bracing, and that it was more than five feet deep. The judge decided that claimant had therefore proven violations of sections of the Industrial Code specific enough to support Labor Law § 241 (6) liability; and that these violations proximately caused the accident, and thus contravened the State's nondelegable duty to claimant under Labor Law § 241 (6). The judge also found that the State had not proven claimant's comparative negligence by a preponderance of the credible evidence. Accordingly, on May 7, 2003, an interlocutory judgment determining the State to be negligent and 100% liable for claimant's injuries was entered in the Court of Claims. The State appealed from both the order denying its cross motion for summary judgment on the section 241 (6) claim and the interlocutory judgment.

In December 2004, the Appellate Division dismissed the State's appeal from the interlocutory judgment as academic; reversed, on the law, the portion of the Court of Claims' order that denied the State's cross motion for summary judgment dismissing the section 241 (6) claim; granted the State summary judgment on and dismissed that claim; and vacated the interlocutory judgment (13 AD3d 498 [2d Dept 2004]). Citing *Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46, 51 [2004]), the court reasoned that the

> "State is not liable . . . under Labor Law § 241 (6) because the claimant was not within the class of persons afforded protection under the statute. Since [the water company] failed to obtain a highway work permit in violation of state law . . . [the water company] and the claimant trespassed on the State's

property in performing excavation and repairs on the state highway . . . Since the claimant was performing work without the State's permission or knowledge, he was not a person 'employed' at a work site within the meaning of the Labor Law, which defines such an individual as one 'permitted or suffered to work' (Labor Law § 2 [7])" (13 AD3d at 500 [citations omitted]).

We granted claimant permission to appeal (13 NY3d 702 [2009])[1] and now affirm.

Labor Law § 241 (6) provides that

"[a]ll contractors and owners and their agents . . . , when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements: . . .

"All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The [New York State Commissioner of Labor] may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work . . . shall comply therewith."

Thus, Labor Law § 241 (6) imposes a nondelegable duty[2] on owners and contractors to comply with the Commissioner of Labor's regulations (*see Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494, 502 [1993]). And "to the extent that [a] plaintiff . . . assert[s] a viable claim under Labor Law § 241 (6), he need not show that defendants exercised supervision or control over his worksite in order to establish his right of recovery" (*id.*).

---

**1.** Claimant first moved for leave to appeal in 2005. We dismissed that motion for lack of finality because his claim under Labor Law § 240 remained pending in the lawsuit (5 NY3d 783 [2005]). In May 2009, however, the parties stipulated to discontinue the section 240 claim.

**2.** As we noted in *Brothers v New York State Elec. & Gas Corp.* (11 NY3d 251, 256 n 1 [2008]), "[i]n tort law, the term 'nondelegable duty,' although widely used, is somewhat misleading. The question is not so much whether a defendant can or has delegated to another party a duty owed by that defendant to a particular plaintiff, but whether the defendant owes the plaintiff a duty in the first place."

But we have consistently held that ownership of the premises where the accident occurred—standing alone—is not enough to impose liability under Labor Law § 241 (6) where the property owner did not contract for the work resulting in the plaintiff's injuries; that is, ownership is a necessary condition, but not a sufficient one. Rather, we have insisted on "some nexus between the owner and the worker, whether by a lease agreement or grant of an easement, or other property interest" (*Abbatiello*, 3 NY3d at 51; *see also Scaparo v Village of Ilion*, 13 NY3d 864, 866 [2009] ["In cases imposing liability on a property owner who did not contract for the work performed on the property, this Court has required 'some nexus between the owner and the worker, whether by a lease agreement or grant of an easement, or other property interest' " (quoting *Abbatiello*, 3 NY3d at 51)]).

We found no nexus in *Abbatiello* where the plaintiff, a cable television repairman, was injured at a building owned by the defendant while responding to the complaint of a tenant who was a cable television subscriber. The plaintiff's employer had sent the plaintiff to the defendant's building to respond to the complaint. We emphasized that the "injured plaintiff was on the owner's premises not by reason of any action of the owner but by reason of provisions of the Public Service Law," which precludes landlords from interfering with the installation of cable television facilities on their property (*Abbatiello*, 3 NY3d at 51). Moreover, the owner was "powerless to determine which cable company [was] entitled to operate, repair or maintain the cable facilities on its property, since [pursuant to Public Service Law § 219] such decision lies with the municipality—the franchisor" (*id.* at 52). As we elaborated,

> "but for Public Service Law § 228, plaintiff would be a trespasser upon [the defendant's] property and [the defendant] would neither owe a duty to plaintiff nor incur liability. Any permission to work on the premises was granted upon compulsion and no relationship existed between [the defendant] and [the plaintiff's employer] or the plaintiff" (*id.*).

We contrasted *Abbatiello* with three earlier cases in which there was a nexus between the owner and the injured worker: *Celestine v City of New York* (86 AD2d 592, 593 [2d Dept 1982], *affd* 59 NY2d 938 [1983] [in action under Labor Law § 241 (6), owner granted an easement to entity contracting for work leading to

plaintiff's accident]); *Gordon v Eastern Ry. Supply* (82 NY2d 555, 559 [1993] [in action under Labor Law § 240 (1),[3] owner leased property to contractor who performed work leading to plaintiff's accident]); and *Coleman v City of New York* (91 NY2d 821, 823 [1997] [in action under Labor Law § 240 (1), owner leased property to injured employee's employer]).

We next applied the nexus test in *Sanatass v Consolidated Inv. Co., Inc.* (10 NY3d 333, 341 [2008]), where a mechanic was injured while installing an air conditioning unit for a tenant of a commercial building owned by the defendant landlord. The tenant had agreed by lease not to make any changes to the premises without the owner's written consent, but nevertheless hired the plaintiff's employer without notifying the landlord. There, a nexus arose from the owner's lease of the premises to the tenant who, in turn, hired the plaintiff's firm to install the air conditioning unit. Further, the tenant's breach of the lease agreement requiring the owner's written consent for alterations "did not sever the nexus" (*id.* at 341-342). We distinguished *Abbatiello*, pointing out that although the owner in that case "was unaware of and did not consent to the plaintiff's presence on the property, these facts alone were not determinative of our affirmance of the dismissal of the complaint"—i.e., "*Abbatiello* did not announce a new notice requirement for section 240 (1) cases" (*id.* at 341). Rather, the difference between *Abbatiello* and *Sanatass* was the absence of a nexus in the former and its presence in the latter (*id.*). And we again explained that in "*Celestine* and its progeny . . . a nexus existed between the out-of-possession owner and the plaintiff, be it by lease, easement or some other property interest" (*id.*). Finally, we observed that "[u]nlike the cable technician in *Abbatiello*, the plaintiff in [*Sanatass*] . . . cannot conceivably be viewed as a 'trespasser' " (*id.* at 342).

*Scaparo* is our most recent decision discussing the nexus prerequisite. There, the injured plaintiffs, employees of the Village of Frankfort, were connecting a sewer lateral from a newly constructed cemetery chapel owned by a church to the sewer main at a street intersection in the village (*see* 64 AD3d 1209, 1211 [4th Dept 2009]). The Herkimer County Industrial Development Agency (HCIDA) owned the property where the sewer lateral was installed; that property was within the Vil-

---

**3.** Like Labor Law § 241 (6), Labor Law § 240 (1) imposes a nondelegable duty on owners.

lage's utility right-of-way (*see id.*). Affirming the Appellate Division, we determined that HCIDA was not liable under Labor Law § 241 (6) because there was no nexus between HCIDA and the injured plaintiffs. As we explained,

> "although the accident occurred on HCIDA's property, HCIDA did not contract with the Village of Frankfort to have the sewer lateral installed, it had no choice but to allow the Village to enter its property pursuant to a right-of-way, and it did not grant the Village an easement or other property interest creating the right-of-way" (*Scaparo*, 13 NY3d at 866).

Here, there was no lease agreement or grant of an easement or other property interest creating a nexus between claimant and the State. Claimant was performing excavation work on the State's premises "not by reason of any action of the [State] but by reason" of the water company's obligation to repair a break in its water line (*Abbatiello*, 3 NY3d at 51). And although claimant protests that the water company's repairs took care of the damage caused to the State-owned roadway by the leak and removed a traffic hazard in an emergency situation,[4] we long ago concluded that whether a property owner benefits in any sense from the injury-related work is "legally irrelevant" to determining whether the Labor Law imposes a nondelegable duty (*see Gordon*, 82 NY2d at 560).

Claimant also urges that he "did not simply trespass on another's property," and tags the statutory requirement for a highway work permit as "[a] mere formality." But we have recognized that the "terms and conditions [of these permits] are not meaningless or optional; the permitee agrees to abide by them in order to obtain DOT's permission to work in the highway right-of-way" (*Brothers*, 11 NY3d at 260). The permit requirement allows DOT to inspect the work site to insure the safety of motorists, pedestrians and others in the work zone, and to safeguard the roadway's integrity. And as we indicated in

---

4. Claimant articulates the nexus that he asserts in this case as follows: "At bar, the nexus between claimant's work and the State's ownership is clear—the emergency situation blocked traffic and the road was buckling, and the State had a non-delegable duty to maintain the road; [the water company's] work was designed to assist the State." In fact, the water company did not repair the leak to help the State maintain its roadway; its repairs simply eliminated or mitigated damages otherwise owing the State for the harm to State-owned property caused by the leak, which the water company was obligated to fix to maintain service to its customers.

*Brothers*, DOT may revoke a highway work permit at any time if necessary to protect the public (*see id.* at 259; *see also* 17 NYCRR 129.3 [b] [the DOT Commissioner "reserves the right to revoke or annul the (state highway) permit at any time and at his discretion without a hearing or the necessity of showing cause"]; 17 NYCRR 131.21 [c] [DOT "reserves the right to modify and to revoke or annul" a highway work permit issued for utility facilities occupying a state right-of-way "upon a determination within its sole discretion, and without a hearing, that continued operation under the permit will cause or continue a threat to the public or to the operation of the highway"]). In addition, the permit requirement allows the State to verify that the permittee has liability insurance in place to protect the State's interests (*see* 17 NYCRR 129.3 [f]; part 127).[5]

Finally, claimant suggests that a highway work permit may not have been necessary here because of the "emergency situation." DOT's regulations, however, make clear that the water company was required to have in hand either a job-specific or an annual permit before undertaking excavation of the roadway, notwithstanding any exigency (*see* 17 NYCRR 126.2, 129.1). There are simply different requirements for notifying DOT, depending on whether or not an emergency exists (*compare* 17 NYCRR 129.3 [a] [1] *with* 17 NYCRR 129.3 [a] [2]; *see also* 17 NYCRR 126.6 [specifying instructions to obtain highway work permits that apply to, among other things, "emergency repairs and public utilities"]). Additionally, even if it were true that the water company was entitled to enter the state highway right-of-way without a work permit in order to make emergency repairs, the State still would not be liable. In that circumstance, "[a]ny permission to work on the premises [would have been] granted upon compulsion and no relationship [would have] existed between [the State] and [the water company] or [claimant]" (*Abbatiello*, 3 NY3d at 52).

The outcome of this case would be different—as the State concedes—if the water company had secured a highway work

---

5. For some unexplained reason, the water company purchased protective liability insurance naming DOT as an additional insured, which was in force at the time of claimant's accident, even though there was no job-specific or annual work permit requiring it. Although the State impleaded the insurance carrier after learning about the policy during discovery, the Court of Claims dismissed the third-party complaint for failure to provide the insurer with timely notice of the claim.

permit before excavating in the state highway right-of-way. In that event, the work permit would have created the nexus between the claimant, the injured worker, and the State, the property owner. Without the permit, though, claimant was a trespasser to whom the State owed no duty under Labor Law § 241 (6).

Although acknowledging that we have always "required as a condition of owner liability [under Labor Law § 241 (6)] no more than some connection, or 'nexus,' between the owner and the plaintiff," the dissent never suggests how this minimal standard was met—i.e., what the nexus might have been—in this case (dissenting op at 63; cf. n 4 at 58). All we are told is that "[t]here is . . . no issue . . . as to whether" this unspecified nexus "was attenuated by out-of-possession status" as was purportedly the question in *Sanatass* (dissenting op at 64). Of course, in *Sanatass* there was a clear nexus—a lease—and the issue, as we articulated it, was not whether this nexus was "attenuated by [the landlord's] out-of-possession status," but whether it had been "sever[ed]" by the tenant's breach of a clause in the lease prohibiting the hiring of a contractor to make alterations in the premises without the landlord's written prior consent (*see Sanatass*, 10 NY3d at 341-342). We decided, of course, that this clause did not sever the nexus created by the lease.

Under the dissent's apparent analysis of our prior cases, a property owner who did not contract for the injury-inducing work is liable under Labor Law § 241 (6) unless the plaintiff's employer's entry onto the premises results from compulsion—i.e., permission *unrelated* to a lease, easement or some other property interest granted by the owner. This is certainly contrary to the way in which we have consistently explained and reconciled our precedents, and effectively eliminates the nexus requirement. More to the point, there is no reason to believe that this is what the Legislature intended. Indeed, such a liability scheme would do away with any motive or means for a property owner "to assure that only financially responsible and safety-conscious subcontractors are engaged so that a high standard of care might be maintained throughout the entire construction site"; and to "furnish[ ] an additional incentive to both insurer and insured to maintain safety standards necessary to avoid increased exposure to liability" (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 301 [1978]).

Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be affirmed, with costs.

Chief Judge LIPPMAN (dissenting). Claimant Alan Morton was injured when, after being "dispatched" by his water company employer to the site of a broken water main located beneath a State-owned roadway, the unshored sides of the area excavated to facilitate the repair fell upon him. He sought to recover for his injuries pursuant to Labor Law § 241 (6), and in the ensuing litigation established that his injuries were attributable to a violation of that statute's requirement that "[a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein." He is now told, however, that he may not recover because the party against whom recovery is sought—and, indeed, the only party potentially answerable in damages under the present circumstances—the State, had not given permission for the repair. It is not disputed that the State would otherwise be statutorily liable by reason of its ownership of the accident site.

The question, then, is whether the failure of claimant's employer to obtain permission should operate to deprive claimant of the remedy the Legislature has provided in enacting Labor Law § 241

> "to achieve the purpose of protecting workers by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 407), instead of on workers, who 'are scarcely in a position to protect themselves from accident' (*Koenig v Patrick Constr. Corp.*, 298 NY 313, 318)" (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985]).

Because the strict liability statute at issue nowhere conditions an owner's liability upon consent to the injury producing work, and because we have expressly held that an owner may not avoid responsibility under the strict liability provisions of the Labor Law by interpolating such a requirement as a condition of recovery, I respectfully dissent.

The strict liability provisions of the Labor Law, sections 240 and 241, do not contain any provision conditioning the liability

of an owner or any other statutorily responsible party upon that party's consent to, permission for, control, or even knowledge, of the injury producing activity. The precautionary obligations imposed under those statutes are absolute and nondelegable and, accordingly, their discharge cannot depend upon whether in a particular case the owner, contractor or agent had notice of or allowed the work (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 560 [1993]; *Coleman v City of New York*, 91 NY2d 821 [1997]); the imperative behind these enactments is that someone, other than the worker, must bear ultimate responsibility for work site safety. The onus is placed on owners, contractors and their agents not because they are invariably situated and apprised to assure the safety of the workplace, but because, generally, they are the parties best positioned and equipped to meet that essential objective (*Allen v Cloutier Constr. Corp.*, 44 NY2d 290, 301 [1978]).

*Abbatiello v Lancaster Studio Assoc.* (3 NY3d 46 [2004]) should not be read to alter the Labor Law's essential allocation of responsibility. There, liability was sought against a building owner for injuries sustained by a technician in the course of a cable television service call for which access to the owner's building was compelled by statute. In deciding that the owner could not in those particular circumstances be held strictly accountable under the Labor Law, the Court observed,

> "Lancaster [the owner] cannot be charged with the duty of providing the safe working conditions contemplated by Labor Law § 240 (1) for cable television repair people of whom it is wholly unaware. Supreme Court correctly noted that, but for Public Service Law § 228, plaintiff would be a trespasser upon Lancaster's property and Lancaster would neither owe a duty to plaintiff nor incur liability. Any permission to work on the premises was granted upon compulsion and no relationship existed between Lancaster and Paragon or the plaintiff" (*id.* at 52).

After *Abbatiello*, there was some belief that an owner's knowledge of and permission for the work in the course of which the sued upon injuries were sustained were generally necessary conditions of owner liability under the Labor Law's strict liability statutes (*see e.g. Sanatass v Consolidated Inv. Co., Inc.*, 38 AD3d 332 [2007], *revd* 10 NY3d 333 [2008]; *Morales v D & A Food Serv.*, 41 AD3d 352 [2007], *revd* 10 NY3d 911 [2008]), but

we addressed this misconception in *Sanatass*, where we reiterated,

> "our precedents make clear that so long as a violation of the statute proximately results in injury, the owner's lack of notice or control over the work is not conclusive—this is precisely what is meant by absolute or strict liability in this context. We have made perfectly plain that even the lack of 'any ability' on the owner's part to ensure compliance with the statute is legally irrelevant (*see Coleman*, 91 NY2d at 823)" (10 NY3d at 340 [citation omitted]).

We at the same time clarified that *Abbatiello*, properly understood in light of the governing statutes, their often acknowledged protective purposes and our consistent precedents, required as a condition of owner liability no more than some connection, or "nexus," between the owner and the plaintiff (*id.* at 341).

While we had noted in *Abbatiello* that the required nexus might be supplied by the circumstance that an out-of-possession owner had granted a property interest in the premises to the party who had afforded the consequently injured worker access, our decision in *Abbatiello* turned not upon the absence of a connective property interest, or even upon the absence of permission, but upon the legal incapacity of the owner to withhold access for the injury producing work (3 NY3d at 52). Similarly, in the subsequently decided case of *Scaparo v Village of Ilion* (13 NY3d 864 [2009]), we upheld the dismissal of a Labor Law § 241 (6) claim upon the ground that the owner "had no choice but to allow the Village [the employer of the injured plaintiffs] to enter its property pursuant to a right-of-way" (*id.* at 866).

Our decision in *Sanatass*, by contrast, addressed the situation only hypothetically adverted to in *Abbatiello*—whether an out-of-possession owner "by a lease agreement or grant of an easement, or other property interest" (*Abbatiello*, 3 NY3d at 51) retained a sufficient nexus with the property and the plaintiff's work upon it to qualify as an "owner" under the Labor Law's strict liability statutes. We held that the out-of-possession owner there did retain the requisite connection, since it had leased the premises to the party that had afforded access to the worker subsequently injured upon the premises in the course of performing alterations. In so holding, we acknowledged that the lease in fact contained a provision, allegedly violated by the lessee, requiring the owner's written permission for the work. Clearly differentiating between nexus and permission, we

rejected the contention that violation of the lease provision requiring permission for the work could vitiate the nexus necessary to sustain the strict liability claim against the owner (*Sanatass*, 10 NY3d at 341-342). We recognized that the injured worker's right of recovery could not, consistent with the Labor Law's dominant protective purpose, be made to depend upon legal claims the owner might have over against third parties (*id.*).

The majority now, ignoring the crucial distinction made in *Sanatass*, equates nexus with permission and, in so doing, affords the nexus requirement a dimension incompatible with the strict liability provisions at issue and their remedial purpose.

There is, of course, no issue in this case as to whether defendant's nexus to the work site and claimant was attenuated by out-of-possession status; defendant owned and was in possession of the roadway where the accident took place. The only remaining nexus issue, then, if *Abbatiello* and its progeny are to be followed, is whether defendant's ownership interest in the work site was rendered nugatory by some countervailing legal compulsion effectively divesting defendant of its right to exclude claimant's employer from its premises. Obviously, there was no such compulsion. It is, to the contrary, defendant State's strenuous contention that, pursuant to Highway Law § 52, access for the work performed by claimant's employer was legally contingent upon defendant's issuance of a permit. This provision in the owner's favor, like the lease provision in *Sanatass*, may well have been violated by the worker's unpermitted access of the property, but there is no reason why this defendant any more than the defendant in *Sanatass* should therefore avoid the responsibilities of ownership under the Labor Law.

Labeling claimant a "trespasser"—one whose presence on the premises was not permitted—is only another way of importing into the Labor Law a coverage condition of owner permission at variance with the statutory scheme. What is relevant is, rather, whether the worker is "employed" to do work otherwise falling within the statutory coverage criteria (*see* Labor Law § 241 [6]). There is no question that claimant was legitimately employed to do the very work he was doing at the time of his injury, or that he was present upon defendant's roadway at the direction of his employer, or that defendant, although empowered to deny access, did not. That defendant may have been unable to exercise its power to do so by reason of the water company's failure to seek a permit for the work cannot be determinative of claimant's

right to the Labor Law's protection, particularly where there is no reason to suppose that defendant would have denied access for the emergently necessary repairs.[1] Under the holding now embraced by the majority no worker will know as he or she sets off to a work site at the direction of his or her employer whether he or she will be covered under the Labor Law's umbrella; there will always be the possibility of a subsequent claim by the owner that permission for the work was not given—that the worker was in the eyes of the owner and pursuant to some agreement or enactment about which the employee cannot be expected to have been aware, a "trespasser."

The Court does today precisely what it said would be impermissible in *Sanatass*: it has permitted an owner to "engraft" onto the Labor Law a limitation upon the law's coverage at odds with the statutory scheme (*see Sanatass*, 10 NY3d at 342). True, here it is the State relying upon an enactment in its favor, and not a private party relying upon a contract, that seeks to benefit from the proposed limitation, but there is no evidence that the Legislature, in enacting the statute upon which the defendant bases its claim of noncoverage, intended to truncate the protections of the Labor Law. And, in the absence of such evidence, the State's dependence upon Highway Law § 52, an apparently modestly intended provision, should be as unavailing as the owner's reliance upon the lease provision in *Sanatass*. If the protections of the Labor Law are to be abridged that is a matter to be frankly undertaken by the Legislature; it should not be accomplished, as it is now, by judicial invention.

Pervading the majority opinion is the very basic misunderstanding, nowhere encouraged in the governing statute or our case law, that in every strict liability Labor Law action "nexus" must be separately demonstrated as an element of the claim. This has never been true. Ordinarily, all that is necessary to demonstrate the liability of an "owner" under the subject provisions is a showing of a statutory violation and causation. Ownership itself ordinarily suffices to establish any connection with the property and the work upon it necessary to sustain liability. An additional showing of connection has only been deemed necessary where an owner is out-of-possession[2]—but we have never actually found a lack of nexus on that ground—or where there

---

1.  Indeed, it appears from the trial testimony that a permit would have routinely issued.

2.  While in our affirming memorandum in *Scaparo* we without explanation glossed "out-of-possession" as without contractual relationship (13 NY3d

is some relevant legal impediment to the owner's assertion of his ownership prerogatives, as in *Abbatiello* and *Scaparo*, where access to the premises is statutorily or otherwise legally compelled notwithstanding any right of exclusion the owner might otherwise have. There has never, until today, been a case in which an in-possession fee owner in no way legally disabled from the assertion of its ownership rights has been held to have an insufficient connection to those working upon the property to support statutory liability under the Labor Law. This is a significant and unwarranted departure that the Legislature may well wish to curtail.

Strict liability statutes invariably produce some harsh outcomes, but that is not a reason to deny them effect. The Legislature has determined to impose extensive duties upon owners to assure worker safety and provide reliable recourse in the event of construction related injury. Plainly, defendant was not at fault in connection with claimant's harm; it was held accountable simply by reason of its ownership of the premises where the accident occurred. Owners, however, are not helpless to protect themselves from the exposure created by the Labor Law. They can purchase insurance to guard against the risk of statutory liability, and can require contractors to do the same and name them as additional insureds.[3] They can, in addition, seek through third-party litigation to place financial responsibility for liability incurred on purely statutory grounds with the party actually at fault. What they should not be permitted to do, however, is to unilaterally tinker with the Labor Law's basic protective ambit and thereby leave an injured worker, otherwise deserving of the law's protection, without recourse. Accordingly, I dissent from the Court's determination to afford such permission and would reverse and rule in claimant's favor.

---

at 866), it does not appear that any departure from *Abbatiello* was intended and the substituted language now read as broadening the separate nexus requirement was, in any event, dicta.

**3.** Defendant, presumably not out of any charitable impulse on the part of the water company, was, in fact, named as additional insured in the water company's liability policy. While the State, and now the majority, suggests that defendant's failure to realize the benefit of that coverage in this case is attributable to the water company's noncompliance with the state permitting law, the suggestion is belied by express findings in the underlying insurance litigation that the State failed to make reasonable efforts to ascertain the existence of such coverage and unreasonably delayed in filing a claim, even after it had learned of the coverage.

Judges GRAFFEO, SMITH, PIGOTT and JONES concur with Judge READ; Chief Judge LIPPMAN dissents and votes to reverse in a separate opinion in which Judge CIPARICK concurs.

Judgment appealed from and order of the Appellate Division brought up for review affirmed, with costs.