[981 NE2d 273, 957 NYS2d 677]

ALEKSEY GURYEV, Appellant, v GREGORY TOMCHINSKY et al., Defendants, and 200 RIVERSIDE BOULEVARD AT TRUMP PLACE et al., Respondents.

Argued November 14, 2012; decided December 11, 2012

**POINTS OF COUNSEL**

*Arze & Mollica, LLP*, Brooklyn (*Raymond J. Mollica* of counsel), for appellant. I. Defendants/respondents are "owners" or "agents of owners" pursuant to the Labor Law. (*Mangiameli v Galante*, 171 AD2d 162; *Wendel v Pillsbury Corp.*, 205 AD2d

527; *Copertino v Ward*, 100 AD2d 565; *Sweeting v Board of Coop. Educ. Servs.*, 83 AD2d 103; *Nowak v Smith & Mahoney*, 110 AD2d 288; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Williams v LeChase*, 15 AD3d 988; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *Allen v Cloutier Constr. Corp.*, 44 NY2d 290; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513.) II. Defendants/respondents "acted in the capacity of an owner" for the purposes of the Labor Law. (*Mangiameli v Galante*, 171 AD2d 162; *Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46; *Morton v State of New York*, 15 NY3d 50; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Sperber v Penn Cent. Corp.*, 150 AD2d 356; *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530; *Williams v LeChase*, 15 AD3d 988; *Phillips v Eastman Kodak Co.*, 204 AD2d 979; *Zaher v Shopwell, Inc.*, 18 AD3d 339; *Copertino v Ward*, 100 AD2d 565.) III. The decision of the Appellate Division thwarts the purpose of the Labor Law. (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513; *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530; *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494; *DeSabato v 674 Carroll St. Corp.*, 55 AD3d 656; *Maciejewski v 975 Park Ave. Corp.*, 37 AD3d 773; *Sperber v Penn Cent. Corp.*, 150 AD2d 356.)

*Cartafalsa, Slattery, Turpin & Lenoff*, New York City (*Robert H. Fischler* and *B. Jennifer Jaffee* of counsel), for respondents. I. Condominium defendants are not owners of Gregory and Marina Tomchinskys' unit or agents of owners pursuant to the Labor Law simply by virtue of owning the land and the common elements, since the Tomchinskys owned their unit in fee simple absolute. (*Scaparo v Village of Ilion*, 13 NY3d 864; *Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46; *Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333; *Celestine v City of New York*, 86 AD2d 592, 59 NY2d 938; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Coleman v City of New York*, 91 NY2d 821; *Williams v LeChase*, 15 AD3d 988; *Phillips v Eastman Kodak Co.*, 204 AD2d 979; *Sperber v Penn Cent. Corp.*, 150 AD2d 356; *Mangiameli v Galante*, 171 AD2d 162.) II. The condominium defendants did not act in the capacity of an owner for the purposes of the Labor Law. (*Mangiameli v Galante*, 171 AD2d 162; *Scaparo v Village of Ilion*, 13 NY3d 864; *Copertino v Ward*, 100 AD2d 565; *Reisch v Amadori Constr. Co.*, 273 AD2d 855; *Zaher v Shopwell, Inc.*, 18 AD3d 339; *Bart v Universal Pictures*, 277 AD2d 4; *Grilikhes v International Tile & Stone Show Expos*, 90 AD3d 480; *Lacey v Long Is. Light. Co.*, 293 AD2d 718; *Lynch v City of New York*, 209 AD2d 590; *Wendel v Pillsbury Corp.*, 205 AD2d 527.) III. Condominium associations must not be treated like

cooperative apartment corporations for the purpose of owner-ship under the Labor Law. (*Frisch v Bellmarc Mgt.*, 190 AD2d 383; *Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530; *All Seasons Resorts v Abrams*, 68 NY2d 81; *DeSabato v 674 Carroll St. Corp.*, 55 AD3d 656; *Maciejewski v 975 Park Ave. Corp.*, 37 AD3d 773, 8 NY3d 815; *Valdovinos v Shore Rd. Apt. Corp.*, 24 Misc 3d 1204[A], 2009 NY Slip Op 51252[U]; *Celestine v City of New York*, 59 NY2d 938; *Gordon v Eastern Ry. Supply*, 82 NY2d 555; *Coleman v City of New York*, 91 NY2d 821; *Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333.)

## OPINION OF THE COURT

READ, J.

Defendants Gregory and Marina Tomchinsky own a residential apartment at 200 Riverside Boulevard at Trump Place, a 47-story building located in Manhattan, which is organized as a condominium (*see* Real Property Law art 9-B [Condominium Act]). The other defendants in this action are the condominium; its Board of Managers (the Board), the entity responsible for the building's day-to-day operation and management; and the Trump Corporation (Trump), the Board's managing agent (collectively, the condominium defendants).

In 2007, the Tomchinskys sought to renovate their apartment before moving in. The Board approved the project, as required by the condominium's bylaws, subject to the terms and conditions of an Alteration Agreement entered into by Mr. Tomchinsky, as unit owner,[1] and the Board, as agent for the building's other unit owners.[2] The Tomchinskys hired defendant YZ Remodeling, Inc. (YZ) to perform the work. Plaintiff Aleksey Guryev, an employee of YZ, was allegedly injured while using a nail gun to install base moldings in the apartment when a nail ricocheted and struck his eye.

This action against the condominium defendants, as well as the Tomchinskys and YZ, followed in December 2008. Plaintiff asserted causes of action to recover damages for common-law negligence and violations of Labor Law §§ 200 and 241 (6). He based his claim under section 241 (6) on Industrial Code rule

---

1. Ms. Tomchinsky did not sign the Agreement.

2. The dissent rather curiously suggests that the Board was also acting as the Tomchinskys' agent when it entered into the Agreement with Mr. Tomchinsky (*see* dissenting op at 202-203, 203-204)—i.e., that Mr. Tomchinsky somehow contracted with himself.

23-1.8 (a) (12 NYCRR 23-1.8 [a]), alleging that YZ failed to supply him with eye protection.[3] All defendants answered; the Tomchinskys and the condominium defendants cross-claimed for indemnification from the other defendants.

YZ moved for summary judgment dismissing the complaint insofar as asserted against it, based upon the exclusive remedy afforded plaintiff under the Workers' Compensation Law, and Guryev cross-moved for summary judgment on the issue of liability on his cause of action alleging a violation of Labor Law § 241 (6). The condominium defendants also cross-moved, asking for summary judgment dismissing the complaint and all cross-claims insofar as asserted against them. Supreme Court denied the motion and cross motions on the ground there were issues of fact; the condominium defendants appealed, and Guryev cross-appealed.[4]

The Appellate Division reversed the order insofar as appealed from by the condominium defendants, granted their cross motion for summary judgment and otherwise affirmed (87 AD3d 612 [2d Dept 2011]).[5] The court held that the condominium defendants were entitled to summary judgment because they "were not entities which ha[d] an interest in the property and who fulfilled the role of owner by contracting to have work performed for [their] benefit" (*id.* at 614 [internal quotation marks omitted]). The court reasoned that these defendants "did not determine which contractors to hire, and were not in a position to control the renovation work or to insist that proper safety practices were followed" (*id.*). We granted Guryev permission to appeal (18 NY3d 802 [2011]), and now affirm.

Labor Law § 241 (6) generally requires "owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work,"[6] to "provide reasonable and adequate protection and safety" for workers and to comply with specific safety

---

3. This provision requires the furnishing of eye protection equipment to employees who are "engaged in any . . . operation which may endanger the eyes." (*Id.*) YZ's owner claims that he provided goggles, which Guryev failed to use.

4. According to the condominium defendants, Supreme Court granted YZ's motion in a separate order handed down the same day as the order appealed from.

5. The Appellate Division's order disposed of all claims by or against the condominium defendants, rendering it final as to them.

6. Subsequent to the Appellate Division's decision, Supreme Court granted

rules promulgated by the Commissioner of the Department of Labor. The duty to comply with the Commissioner's safety rules, which are set out in the Industrial Code (12 NYCRR), is nondelegable. The threshold issue on this appeal is whether the condominium defendants are "owners" or "agents of owners" of the Tomchinskys' apartment. Plaintiff claims that they are, principally because the condominium owns the land beneath the building, and, he asserts, the Board and Trump are the condominium's agents as a result. Plaintiff analogizes the facts here to those in *Gordon v Eastern Ry. Supply* (82 NY2d 555 [1993]), which he calls the "seminal case" in his favor.

In *Gordon*, the plaintiff brought suit under the Scaffold Law (Labor Law § 240 [1]), which specifies that "[a]ll contractors and owners and their agents" engaged in cleaning a building or structure must furnish or erect proper scaffolding, ladders and similar safety devices to protect employees in the performance of work. Gordon was allegedly injured while cleaning the exterior of a railroad car with a hand-held sand blaster. Eastern Railway Supply, Inc. owned the "sandhouse" in which the cleaning was performed as well as the real property upon which the "sandhouse" was situated. Eastern, which had leased the real property to Ebenezer, a wholly owned subsidiary, took the position that it was not liable as an owner because it did not contract to have the sand blasting work performed, and the work was not undertaken for its benefit. Eastern further pointed out that it did not own the structure being cleaned—i.e., the railroad car. We held that Eastern was an owner, resting liability upon "the fact of ownership" of the real property, and noting additionally that the property was leased to Ebenezer to be used for cleaning and repairing railroad cars so that "[t]he very presence of the [railway car] on [Eastern's] property was the direct result of [its] actions and established a sufficient nexus for liability to attach to it as an 'owner' " (82 NY2d at 560).

█ In this case, there was no lessor-lessee relationship between the condominium and the Tomchinskys. Rather, the Tomchinskys owned their apartment or "unit" in fee simple absolute (*see* Real Property Law § 339-e [16] [defining "unit owner"]; *see also id.* § 339-h ["Each unit owner shall be entitled to the *exclusive* ownership and possession of his unit" (emphasis added)]). In short, the Tomchinskys' apartment is real property

---

the Tomchinskys summary judgment dismissing plaintiff's complaint as asserted against them on the basis of the one- and two-family homeowner's exception.

separate and apart from the land beneath the condominium building, and plaintiff's accident occurred while he was working in their apartment. In *Gordon*, by contrast, the plaintiff injured himself while working on real property owned by Eastern, on a "structure," also owned by Eastern, placed on the property as a result of its lease with Ebenezer. And since the Tomchinskys, not the condominium, own the Tomchinskys' apartment, the Board and Trump are not the owner's agents within the meaning of the Labor Law.

■ Alternatively, plaintiff argues that the condominium was an owner for purposes of Labor Law § 241 (6) by virtue of the mandatory Alteration Agreement entered into by Mr. Tomchinsky and the Board, a position echoed by the dissent. The Agreement's provisions, however, simply reflect the Board's interest in making sure that the proposed renovations were carried out in a way that safeguarded the integrity of the building, other units and common areas; complied with any permitting requirements; and inconvenienced other residents as little as possible. The Agreement did not vest the Board with authority to "determine which contractors to hire, . . . control the renovation work or . . . insist that proper safety practices [be] followed" (87 AD3d at 614; *see also Mangiameli v Galante*, 171 AD2d 162, 164 [3d Dept 1991] [condominium association is not an owner within the meaning of Labor Law § 241 (6) where "it did not own the property upon which plaintiff was to perform his work" and there was no "allegation that the (a)ssociation had either the authority to contract with plaintiff's employer to perform the work or the right to control the work"]).[7]

---

**7.** The section of the Agreement between Mr. Tomchinsky and the Board relating to his obligations prior to commencement of work required him to cause preparation of plans and specifications, generally subject to the Board's approval. Concomitantly, he was

"responsible for assuring that (i) the Plans and Specifications and all modifications thereto and (ii) all Unit Owner's Work shall be performed strictly in accordance with the approved Plans and Specifications, comply with all applicable laws, ordinances, orders, rules, regulations and requirements (collectively, 'Legal Requirements') of all governmental and quasi-governmental authorities and boards of fire underwriters having jurisdiction thereof (collectively, 'Governmental Authorities') [sic]."

The dissent characterizes this provision as "[p]articularly significant" in that it shows that "[t]he condominium . . . retained the power to insist upon compliance with the Industrial Code worker safety provisions, even within a

It bears keeping in mind that *Gordon* and our other cases relied upon by plaintiff and the dissent stand for the proposition that "ownership of the premises where the accident occurred—standing alone—is not enough to impose liability under Labor Law § 241 (6) where the property owner did not contract for the work resulting in the plaintiff's injuries"; additionally, we have "insisted on some nexus between the [non-contracting] owner and the worker, whether by a lease agreement or grant of an easement, or other property interest" (*Morton v State of New York*, 15 NY3d 50, 56 [2010], citing *Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46 [2004], and *Scaparo v Village of Ilion*, 13 NY3d 864 [2009] [internal quotation marks omitted]). In short, ownership is a "necessary condition" although "not a sufficient one" for a non-contracting party's liability under section 241 (6) (*id.*), and the condominium did not own the Tomchinskys' apartment. The Agreement between Mr. Tomchinsky and the Board does not reflect otherwise, as plaintiff and the dissent contend, or, more importantly, alter this fact.

█ Finally, plaintiff argues, and the dissent agrees, that, as a matter of public policy, condominiums and cooperative corporations should be treated similarly under the Labor Law because both are forms of "collective ownership." Cooperative corporations have been held to be owners potentially liable under the Labor Law when a contractor's employee is injured while performing construction work in an apartment within the building (*see DeSabato v 674 Carroll St. Corp.*, 55 AD3d 656, 658-659 [2d Dept 2008]). Liability under the Labor Law as an owner, however, turns in every case on sometimes fine distinctions relating to ownership of the premises and control of the injury-producing work. And whereas condominium apartments are owned by individual unit owners (here, the Tomchinskys), a cooperative corporation owns an entire building, including the

residential unit nominally owned in fee by a different party" (dissenting op at 203). Of course, the Tomchinskys did not "nominally" own their apartment in fee. As noted previously, they owned their apartment in fee simple absolute (*see* Real Property Law § 339-e [16]), and were "entitled to the *exclusive* ownership and possession" of it (*see* Real Property Law § 339-h [emphasis added]). Accordingly, the Board did not possess any "power" with respect to ownership of the Tomchinskys' apartment that it might have "retained." Putting this aside, it is quite a leap of logic to conclude that the Board assumed responsibility for making sure the Tomchinskys' contractor performed work in compliance with the Industrial Code by virtue of a provision relating to Mr. Tomchinsky's responsibility to assure that this work was performed in accordance with the approved plans and specifications and legal requirements related thereto.

apartments where individual tenant-shareholders reside; the residents of these apartments own stock in the corporation, which grants them proprietary leases to occupy the space in the premises to which their shares are allocated (*see generally Frisch v Bellmarc Mgt.,* 190 AD2d 383, 387 [1st Dept 1993] ["While some superficial aspects of condominium and cooperative ownership are similar . . . , the two forms of interest in real property are fundamentally different by design and as a matter of law"]).

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN (dissenting). The condominium's claim of non-liability is premised upon the circumstance that it is not the titleholder of the Tomchinsky unit. It is, in fact, undisputed that the Tomchinskys own the unit in fee, but that is not for Labor Law purposes the end of the inquiry. Of course, under the Labor Law title ordinarily suffices as a ground for statutory liability (*but see Morton v State of New York*, 15 NY3d 50 [2010]; *Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46 [2004]). But, as the statute itself makes clear and we have accordingly recognized (*see Scaparo v Village of Ilion*, 13 NY3d 864, 866 [2009]), the absence of title does not necessarily dictate a contrary conclusion. The statute's array of non-delegable duties are imposed not upon owners alone but also upon contractors and agents of owners—non-title holding entities. Moreover, we have recognized the principle that Labor Law "owner" liability may be imposed on non-owners where they have an interest in the property and have acted as owners in connection with contracting for improvements (*see Scaparo*, 13 NY3d at 866, citing *Copertino v Ward*, 100 AD2d 565, 566 [2d Dept 1984]). As has been observed, the critical factor in determining whether a party should be treated as an "owner" for Labor Law purposes is whether it retains the owner's prerogative to insist upon compliance with proper safety practices (*see Copertino*, 100 AD2d at 567).

It is clear from the Alteration Agreement entered into by the condominium Board "as agent for the unit owners" and the Tomchinskys, that, notwithstanding the conveyance of a fee interest in the subject unit to the Tomchinskys, the condominium in fact continued to possess with respect to that unit certain prerogatives of ownership. Proposed alterations were subject to condominium approval, which could be withheld "in the Board's

sole and absolute discretion," and the condominium was empowered to require the amendment of unit owners' plans with an architect of its own choosing. In addition, the condominium reserved to itself plenary power to veto the unit owner's choice of contractors and the right to select contractors in certain commonly arising situations where the work within the unit would affect building systems. Particularly significant here is that provision of the agreement in which Board approval of a unit owner's plans is conditioned upon the unit owner's representation that "all Unit Owner's work shall be performed strictly in accordance with the approved Plans and Specifications [and] comply with all applicable laws, ordinances, orders, rules, regulations and requirements." The condominium, then, retained the power to insist upon compliance with the Industrial Code worker safety provisions, even within a residential unit nominally owned in fee by a different party. Indeed, the Alteration Agreement reflects a reservation by the condominium of a right to reentry "for the purpose of inspecting Unit Owner's Work to ensure that Unit Owner's Work *is being* performed, and has been performed, in accordance with the Plans and Specifications and this Agreement" (emphasis supplied), and further provides that the condominium at its "sole and absolute discretion" is entitled to stop work for breach of any of the agreement's covenants, including, of course, that in which the unit owner promised compliance with "all applicable laws, ordinances, orders, rules, regulations and requirements."

The condominium defendants concede, as they must, that "the [condominium] Board certainly dictated the terms under which the work [in the Tomchinsky unit] would be performed" (brief for defendants-respondents at 29), but contend that they may not be deemed Labor Law "owners" because, under the Alteration Agreement, it was the unit owner that was primarily responsible for assuring compliance with applicable work site safety regulations. But this only begs the question whether the condominium defendants, in light of the proprietary powers they evidently reserved, are "owners." If they are, it makes no difference that they purported to contract their responsibilities to the unit fee owners, for those owner responsibilities are non-delegable (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Indeed, as we observed in *Sanatass v Consolidated Inv. Co., Inc.* (10 NY3d 333, 342 [2008]), "[t]o allow owners to [contract out of the statute] . . . would eviscerate the strict liability protection afforded by the Labor Law." Inasmuch as it would appear that the role the condominium reserved to itself

in the unit alteration process was that of an owner—or at the very least that of the owners' agent—it was for Labor Law purposes a statutorily responsible party. And, given that status, it cannot be useful for the condominium to claim that it delegated its owner responsibilities or that it did not actually direct and control the work resulting in plaintiff's injury (*see Rocovich*). It is a hallmark of the Labor Law's strict liability scheme that a party will be deemed responsible based simply upon its proprietary capacity to require compliance with worker safety laws and regulations; if that capacity exists, actual supervision and control of the work site is unnecessary (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]).

It is obvious that a condominium does in fact retain a propriety interest in its owners' units every bit as palpable in the unit alteration context as that of a residential cooperative corporation and that there exists no rationale for treating the two kinds of entities differently when it comes to allocating responsibility under the Labor Law. It is to blink at reality to treat condominiums simply as agglomerations of one-family dwellings, as this Court now does. The consequence of such a studied elevation of form over substance is dramatically to reduce the Labor Law's protective ambit: a construction laborer injured while working in a condominium unit now has no Labor Law cause of action against the unit owner by reason of the single dwelling exemption, no claim against his contractor employer by reason of the workers' compensation defense, and no statutory claim against the condominium because it is not the title owner of the unit. The statute would apply to workers frequently employed in the tens of thousands of condominium units in this State, if at all, only haphazardly—where, for example, there was a non-employer contractor with supervisory responsibility on the site (but even under that scenario a workers' compensation defense might be available). Plainly, this was not what the legislature had in mind when it amended the Labor Law (L 1969, ch 1108, § 1) to place non-delegable, strictly enforceable protective duties on "[a]ll contractors and owners and their agents" (Labor Law §§ 240, 241 [as amended]) so as to situate " 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' rather than on the workers themselves (Mem of Senator Calandra and Assemblyman Amann, 1969 NY Legis Ann, at 407)" (*Sanatass*, 10 NY3d at 338; *see also Gordon*).

It is true, of course, that the Labor Law exempts owners of single-family dwellings from its strict liability provisions, but that exemption could not, consistent with the Labor Law's broad remedial purpose, have been intended to shield from statutory "owner" responsibility entities retaining significant construction related proprietary powers as to the numerous structurally interconnected units under their aegis. The court's conclusion to the contrary rips a gaping hole in the Labor Law's protective mantle—one that the legislature will have to mend if the statutory scheme is not to be rendered utterly arbitrary in its application and largely inefficacious in meeting its vaunted objectives.

Accordingly, I dissent. The order of the Appellate Division should, in my view, be reversed and plaintiff's Labor Law § 241 (6) claim reinstated.

Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Chief Judge LIPPMAN dissents and votes to reverse in a separate opinion in which Judge CIPARICK concurs.

Order affirmed, with costs.