OPINION OF THE COURT
Phyllis Orlikoff Plug, J.
Plaintiff in this negligence/Labor Law action seeks damages for personal injuries sustained on November 12, 2006, while working as a roofer at New York City Intermediate School 125, located at 45-02 47th Avenue, in Queens, New York (premises). The complaint alleges that plaintiff was struck by a “tar” bucket which fell from the hoist’s container being hoisted down by plaintiffs coworkers from the roof of the five/six-story school building. At the time of the accident, plaintiff was employed by Imperium Construction; the premises were owned by the City and the Department of Education operated a school out of the premises. Prior to November 12, 2006, the New York City School Construction Authority (NYSCA) started a large construction project at the school including the removal and replacement of the roof, window installation and interior repairs. NYSCA was responsible for “the proper [implementation] of the project from the design stage to finish stage.” The contract for the construction project was awarded by NYSCA to Admiral Construction, LLC (Admiral), which was to serve as a general contractor for the project. Admiral, in turn, subcontracted the roofing work of the project to plaintiffs employer, Imperium. Plaintiff moves for partial summary judgment in his favor on his Labor Law claims. The City opposes the motion and cross-moves for summary judgment in its favor dismissing the complaint.
Motion
The undisputed record reveals the following: An exterior material hoist was installed to deliver materials to and from the roof. The hoist was located on the backyard side of the main school building. The hoistway (the shaft) for the hoist mechanism was about eight-feet-by-eight-feet square and extended from the ground to the roof of the building. The main building was five or six stories and about 75 feet high. The metal cable of the hoist was in the middle of the hoistway. Containers were used to transport materials up and down the roof; one of them was a metal container about 2V2-to-3-feet square. The metal container did not have a cover. The hoist mechanism did not have any tug lines to control the movement of the hoist’s container and the cable. The hoistway did not have any plank *364 ing to protect against falling objects. The entrance to the hoist-way at the ground level was not guarded or barricaded; it was merely an open area.
In support of his motion, plaintiff submitted, inter alia, his examination before trial testimony. Plaintiff testified as follows: on the date in question, it was cloudy and windy. At the direction of their supervisor, workers were raising materials from the ground to the roof and lowering garbage and leftover materials to the ground for the purpose of disposal. The materials were raised and lowered by the use of the hoist mechanism. The foreman assigned two workers to the rooftop and two workers, including plaintiff, to the ground level. Because of the wind, the container moved and turned more than usual. The accident occurred at approximately 11:00 a.m. The workers on the roof signaled plaintiff and his coworker on the ground to clear the hoistway because they were lowering a load. Plaintiff was standing outside of the hoistway’s opening, working on loading and unloading a hi-lo device, when a “tar” bucket being hoisted down in the container fell from the container, ricocheted out of the unguarded opening and struck plaintiff. There was no planking in the hoistway to protect against falling objects, no tag lines to control swaying of the hoist’s container while in motion, no gates or barricades at the hoist’s entrance; the container was overloaded, and the “tar” bucket was unsecured.
To prevail on a claim under Labor Law § 240 (1), a plaintiff must prove that the statute was violated and that such violation was a proximate cause of the resulting injuries (see Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280 [2003]). Plaintiff established, prima facie, that the defendants are subject to liability under Labor Law § 240 (1) based on his deposition testimony that an unsecured tar bucket fell on him while it was being hoisted down from the roof (see Zervos v City of New York, 8 AD3d 477 [2004]). Section 240 (1) applies to the “special hazards” of falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured (see Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 501 [1993]; see also Rocovich v Consolidated Edison Co., 78 NY2d 509 [1991]). In addition to the evidence that the plaintiff was struck by an inadequately secured tar bucket, there was evidence that the defendants failed to provide safety devices as required by Labor Law § 240 (1), and that the breach was a proximate cause of the plaintiffs injury (see Zimmer v Chemung County Performing Arts, 65 NY2d 513 [1985]; see also Sog v G.S.E. Dynamics, *365 239 AD2d 489 [1997]). It is well settled that “[a]bsolute liability for falling objects under Labor Law § 240 (1) arises only when there is a failure to use necessary and adequate hoisting or securing devices” (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 268 [2001]; see Mendoza v Bayridge Parkway Assoc., LLC, 38 AD3d 505 [2007]).
In opposition, however, defendants submit that the work site had been closed on the date in question due to unfavorable weather conditions and that plaintiffs employer was unlawfully working at the work site without the general contractor present. Defendants submitted a copy of the daily report for November 12, 2006 prepared by Admiral, the general contractor for the project. The report states that no activity was performed at the work site on that date because of unfavorable weather conditions. More specifically, the report notes that November 12, 2006 was windy and rainy and that all activities at the site were cancelled for the day due to unfavorable and unacceptable weather conditions. Also, defendants submitted the affidavit of Rigoberto Ospina, the superintendent for the general contractor. Ospina avers that the daily report for November 12, 2006 is factually correct, that the daily report was prepared by him each day, that the site was closed on the date in question because of weather conditions and that, since Admiral had closed the site for the day, no one from Admiral, including the superintendent, was at the site on November 12, 2006. Significantly, Ospina further avers that no subcontractor was permitted to work or perform any type of work at the job site if the general contractor was not present at the site. Finally, according to Ospina, if plaintiffs employer (Imperium) was working on November 12, 2006, despite the fact that the site was closed and the general contractor was not present, it was doing so illegally and that all subcontractors knew that they were not permitted to work at the site if the general contractor was not present. The rule, that the general contractor must be present on the site or the subcontractors may not work, was memorialized in article 5 of the general conditions portion of book 1 of the solicitation volumes for the Intermediate School 125 renovation project. These solicitation volumes consist of books 1 and 2 and are bidding documents from the School Construction Authority for the project.
Defendants argue, therefore, that under the circumstances where a work site is closed and no activity is permitted at the site, they cannot be held vicariously liable to plaintiff under the *366 Labor Law or under a common-law cause of action for injuries plaintiff allegedly sustained while impermissibly working at the job site. While there is no case law directly on point on this issue, it has been held that “an owner is not ‘an insurer after having furnished a safe workplace’ and that an accident, in and of itself, does not establish a statutory violation” (Sanatass v Consolidated Inv. Co., Inc., 10 NY3d 333, 339 [2008]; see also Blake v Neighborhood Hous. Servs. of N.Y. City, supra). The Court of Appeals has repeatedly explained that “strict” or “absolute” liability is necessarily contingent on a violation of the Labor Law. At no time, however, did the Court or the Legislature ever suggest that a defendant should be treated as an insurer after having furnished a safe workplace. The point of the Labor Law is to compel contractors and owners to comply with the law, not to penalize them when they have done so.
To be sure, the courts have long held that the statutes are for the protection of workers from injury and undoubtedly are to be construed as liberally as may be for the accomplishment of the purpose for which they were thus framed (Quigley v Thatcher, 207 NY 66, 68 [1912]). But to impose liability for an injury even though proper safety precautions were taken would not further the Legislature’s purpose. It would, instead, be a sweeping and dramatic turnabout that the statute neither permits nor contemplates. As the Court of Appeals has recognized in a related context, the language of the Labor Law “must not be strained” to accomplish what the Legislature did not intend (Martinez v City of New York, 93 NY2d 322, 326 [1999]). If liability were to attach here even though the work site was closed for safety reasons, the Legislature would have simply made owners and contractors into insurers.
Plaintiff is also not entitled to summary judgment because issues of fact exist as to how the accident occurred.
“[W]here the manner of the happening of the accident is within the exclusive knowledge of the plaintiff, an award of summary judgment on liability is inappropriate because the defendant[(s)] should have the opportunity to subject the plaintiff’s testimonial account to cross-examination and have his credibility determined by the trier of fact” (Manna v New York City Hous. Auth., 215 AD2d 335, 336 [1995]; see Klein v City of New York, 89 NY2d 833 [1996]).
Accordingly, the motion for summary judgment in plaintiffs favor on his Labor Law claims is denied.
*367 Cross motion
The record reveals that the cross motion is untimely. An untimely motion or cross motion for summary judgment may be considered by the court, however, where, as here, a timely motion for summary judgment was made on nearly identical grounds (see Bressingham v Jamaica Hosp. Med. Ctr., 17 AD3d 496 [2005]; Boehme v A.P.P.L.E., A Program Planned for Life Enrichment, 298 AD2d 540 [2002]; Miranda v Devlin, 260 AD2d 451 [1999]). In such circumstances, the issues raised by the untimely motion or cross motion are already properly before the court and, thus, the nearly identical nature of the grounds may provide the requisite good cause (see CPLR 3212 [a]) to review the untimely motion or cross motion on the merits. Notably, the court, in the course of deciding the timely motion, is, in any event, empowered to search the record and award summary judgment to a nonmoving party (see CPLR 3212 [b]).
For reasons noted above, however, the cross motion is also denied on the merits as there are questions of fact as to whether the work site was officially closed due to weather conditions and whether plaintiff and/or his employer knew or should have known of the closure.
Accordingly, the cross motion for summary judgment is denied.