■ RAUL BARRETO, Appellant, et al., Plaintiff, v METROPOLITAN TRANSPORTATION AUTHORITY et al., Respondents. (And Other Third-Party Actions.) [973 NYS2d 636]—

Order, Supreme Court, New York County (Michael D. Stallman, J.), entered April 5, 2012, which denied plaintiff's cross motion for partial summary judgment on his common-law negligence and Labor Law §§ 200, 240 (1) and 241 (6) claims against defendant IMS Safety Corp., denied plaintiff's cross motion for partial summary judgment on his section 240 (1) claim against defendants Metropolitan Transportation Authority (MTA), New York City Transit Authority (NYCTA), and the City of New York, granted IMS's motion for summary judgment dismissing the complaint and any cross claims against it, and granted the motions of defendants MTA, NYCTA and the City for summary judgment dismissing the section 240 (1), 241 (6) and 200 claims as against them, affirmed, without costs.

Plaintiff brought this personal injury action after he fell into an uncovered manhole in front of 60 Lafayette Street in Manhattan in January 2005, while performing asbestos removal work below city streets as part of a city environmental project.

Plaintiff was employed by third-party defendant P.A.L. Environmental Safety Corp. (PAL), the general contractor at the work site. PAL was hired by NYCTA on behalf of MTA, which leased the area of the street surrounding the manhole from the City, the site owner. By subcontract, PAL retained IMS as a safety consultant at the site. The City, MTA, and NYCTA did not contract with IMS or any other party to ensure site safety, and neither supervised nor provided any equipment for the project. A PAL supervisor directed plaintiff's work.

PAL removed asbestos during night shifts that started at about 8:00 p.m. The standard procedure for the asbestos removal work was as follows: At the beginning of each shift, PAL workers constructed a wooden enclosure covered with a plastic sheeting around the manhole to protect the surroundings from asbestos contamination. An opening in the enclosure provided access to the manhole. After the PAL workers erected the enclosure, MTA inspectors checked to see that electricity had been turned off in the manhole, and IMS monitored the below-ground air quality before workers descended. Once given permission, at least two PAL workers—required because of the manhole cover's weight—removed the cover and placed it outside the enclosure. They then sealed the enclosure opening and descended through the manhole.

At the end of the shift, the PAL workers were directed to remove their equipment from below ground, exit the manhole, replace its cover, and dismantle the containment enclosure surrounding the manhole.

Plaintiff's accident occurred at the end of a shift, after he and two coworkers had finished working below ground and climbed out of the manhole. Instead of covering the manhole as they had been directed, plaintiff and coworkers began dismantling the containment enclosure. Plaintiff then fell into the uncovered manhole. In his deposition testimony, plaintiff acknowledged that his PAL supervisor had told him that same day to cover the manhole before breaking down the enclosure, but that he neither checked nor asked whether the manhole was open before starting work "because the supervisor is supposed to do that." The only people present at the site when the accident occurred were plaintiff, his two coworkers, and a PAL shop steward.

In June 2005, plaintiff brought this action, asserting claims against defendants for common-law negligence and violation of Labor Law §§ 200, 240 (1) and 241 (6). Thereafter, plaintiff discontinued his negligence and Labor Law § 200 claims against the City and plaintiff's wife discontinued her derivative claims. After discovery, the City, MTA and NYCTA, and IMS separately

moved for summary judgment dismissing the complaint against them and plaintiff cross-moved for partial summary judgment against defendants as to liability for his claims.

The motion court denied plaintiff's motion for partial summary judgment and granted defendants' motions dismissing the complaint finding that plaintiff was the sole proximate cause of the accident because he did not cover the manhole before beginning to dismantle the containment enclosure.

We note at the outset that IMS, the site safety consultant, cannot be liable for the accident under plaintiff's theories because it was a subcontractor with no supervisory authority over plaintiff or his work (*see Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 148 [1st Dept 2012]).

As to Labor Law § 240 (1), which imposes a non-delegable duty upon owners and general contractors to provide safety devices to protect workers from elevation-related risks, liability would attach where a violation of that duty proximately caused injuries (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]). Conversely, where a plaintiff's own actions are the sole proximate cause of the accident or injury, no liability attaches under the statute (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]). Where a plaintiff has an adequate safety device readily available that would have prevented the accident, and for no good reason chooses not to use it, Labor Law § 240 (1) does not apply (*id.* at 40).

Here, plaintiff was provided with the perfect safety device, namely, the manhole cover, which was nearby and readily available. He disregarded his supervisor's explicit instruction given that day to replace the cover before dismantling the enclosure. Plaintiff has not afforded any good reason why he started taking apart the enclosure before ascertaining whether the cover was in place. Having just emerged from it, plaintiff should have known that the manhole was still open, and covering it at that time would have avoided the accident.

Plaintiff's claim that the statute required defendants to furnish a guardrail around the manhole, or safety netting or a harness, is not applicable here where the manhole cover was the adequate device for protecting the workers. There is no reason that other devices were necessary after the workers exited the manhole or that the manhole cover was inadequate. Moreover, neither a guardrail, netting nor a harness would have prevented the accident as they would have been opened or removed to allow the workers to exit the manhole and to deconstruct the enclosure.

Since none of the remaining named defendants supervised

the work, nor were they on notice of any premises defect, there is no basis for liability under Labor Law § 200 or under any theory of common-law negligence (*see Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554-555 [2006]; *Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d 446, 449 [1st Dept 2013]; *Serrano v Popovic*, 91 AD3d 626, 627-628 [2d Dept 2012]). The Industrial Code violations cited by plaintiff that would give rise to any claim under Labor Law § 241 (6) did not proximately cause the accident. Concur—Tom, J.P., Friedman and Freedman, JJ.

Feinman, J., dissents in part in a memorandum as follows: I agree with the majority that defendant IMS Safety Corp. was not a statutory agent subject to liability under Labor Law § 240 (1) or § 241 (6). However, I dissent in part, because I believe the motion court should have granted plaintiff's motion for summary judgment on his Labor Law § 240 (1) claim as against the other defendants. Plaintiff's work in close proximity to an open, 10-foot hole posed an elevation-related risk covered by Labor Law § 240 (1) as a matter of law (*see Alonzo v Safe Harbors of the Hudson Hous. Dev. Fund Co., Inc.*, 104 AD3d 446, 449-450 [1st Dept 2013]).

The Court of Appeals has clearly stated that section 240 (1) "was designed to place the responsibility for a worker's safety squarely upon the owner and contractor rather than on the worker" and that the statute "is to be liberally construed to achieve its objectives" (*Felker v Corning Inc.*, 90 NY2d 219, 224 [1997]). Plaintiff established his entitlement to judgment as a matter of law by showing that defendants failed to provide safety devices adequately protecting him from falling through the hole (*see Burke v Hilton Resorts Corp.*, 85 AD3d 419, 419-420 [1st Dept 2011]). The president of defendant IMS at the time of the accident admitted in his deposition that on projects similar to this one, a metal guardrail system would typically be placed around a manhole while it was uncovered to provide protection to workers under the applicable OSHA regulations. He further stated that responsibility for providing this guardrail was shared by IMS, the MTA supervisor, and the superintendent from plaintiff's employer, third-party defendant P.A.L. Environmental Safety Corp. I do not find sufficient support in the record for the majority's statement that, had this guardrail been provided, it would have been opened or removed from the manhole before the accident occurred and therefore would not have prevented plaintiff's injuries. At the time of the accident, the cover was not on the manhole, and no guardrail or other adequate safety device was constructed, placed, or operated as to give proper protection to plaintiff.

The majority opinion concludes that plaintiff's failure to ensure that the manhole was covered before he began dismantling the surrounding enclosure of wood and plastic sheeting was the sole proximate cause of his fall through the hole. It is true that "if the plaintiff is *solely* to blame for the injury, it necessarily means that there has been no statutory violation" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003] [emphasis added]). Under the "sole proximate cause" doctrine, a defendant can avoid liability by showing that the "plaintiff had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004]). A plaintiff "is expected, as a normal and logical response, to obtain a safety device himself" only when the plaintiff "knows exactly" where it is located, and "there is a practice of obtaining the safety device himself because it is easily done" (*Auriemma v Biltmore Theatre, LLC*, 82 AD3d 1, 10-11 [1st Dept 2011] [internal quotation marks omitted]; *see Cherry v Time Warner, Inc.*, 66 AD3d 233, 238 [1st Dept 2009]). Furthermore, the "general availability of safety equipment at a work site does not relieve the defendants of liability" (*Auriemma* at 11).

Here, the majority is of the opinion that "plaintiff was provided with the perfect safety device, namely, the manhole cover" and holds that plaintiff was the sole proximate cause of his accident because he disregarded his supervisor's instruction to replace the manhole cover before dismantling the enclosure for asbestos containment. In my view, the majority misconstrues the record. Plaintiff could not have physically replaced the manhole cover by himself, as it was too heavy for one person to move. Plaintiff's supervisor stated only that, at the beginning of the project, he directed plaintiff to not perform work around the manhole area while it was uncovered; there is no indication that he directed plaintiff to personally cover the manhole. The supervisor further stated that ensuring the manhole was covered was the responsibility of the IMS representative, who was sitting in his car a few feet from the area at the time of the accident. Plaintiff had not personally removed the manhole cover at the beginning of the shift. There is evidence that the electrical lights in the work area had been turned off before the deconstruction work began. At the very least, these facts raise a triable issue of fact as to whether plaintiff was the sole proximate cause of his accident.

Furthermore, while the manhole cover would have prevented

this particular accident, it was *not* an adequate precaution against the danger of falling from a height, as contemplated by Labor Law § 240 (1), throughout the duration of the work shift. The risk of falling through the manhole existed for the entire time the cover was off, not only while the surrounding enclosure was being deconstructed. Had a safety device like the guardrail discussed above been provided, plaintiff would have been protected from this accident, whether it occurred during the deconstruction or at any earlier point of his shift. As already noted, I do not read the record to support the majority's statement that the railing would have been opened or removed prior to deconstruction of the enclosure. Even if plaintiff's failure to ensure that the manhole was covered was a contributing cause of his accident, defendants' violation of Labor Law § 240 (1) in failing to provide a railing or other adequate safety device while the cover was off the manhole was also a proximate cause. Therefore, any negligence on the part of plaintiff was not the sole proximate cause of the accident. His actions merely amount to comparative negligence, and do not provide a defense to his Labor Law § 240 (1) claim (*see Stolt v General Foods Corp.*, 81 NY2d 918 [1993]).

Contrary to the City's contention, it is subject to liability under Labor Law § 240 (1) as an owner of the premises. The City had a sufficient nexus to plaintiff, since it leased the premises to the Transit Authority, which retained plaintiff's employer to remove asbestos from the premises (*see Sanatass v Consolidated Inv. Co., Inc.*, 10 NY3d 333, 341-342 [2008]).

Accordingly, I would modify the order to grant plaintiff's motion for partial summary judgment on his section 240 (1) claim against defendants MTA, NYCTA, and the City. **[Prior Case History: 2012 NY Slip Op 30855(U).]**